## In re PASSOW & SONS.

### KOWALSKI et al. v. McKEY.

(Circuit Court of Appeals, Seventh Circuit. June 19, 1924.)

No. 3236.

1. **Bankruptcy** ⟫380—**Notice of meeting to consider composition before adjudication held insufficient as notice of meeting for allowance of claims.**

Notice published by a referee before adjudication of a meeting of creditors to consider a composition *held* insufficient as notice of a meeting for allowance of claims, required by Bankruptcy Act, § 12a (Comp. St. § 9596), before an offer of composition can be considered.

2. **Bankruptcy** ⟫380—**Petition for meeting to consider composition must be substantially in form prescribed by General Orders.**

Under General Order No. XXXVIII, providing that the several forms annexed shall be observed and used, with such alterations as may be necessary to suit the circumstances of any particular case, there can be no valid call for a meeting to consider an offer of composition before adjudication, unless and until the terms of the proposed composition substantially as provided for in Form 60 have been submitted to the court.

3. **Bankruptcy** ⟫384—**Conditions to confirmation of composition.**

The court is without jurisdiction to confirm a composition until there has been a compliance with Bankruptcy Act, § 12b (Comp. St. § 9596) by acceptance by creditors and deposit by bankrupt of the consideration to be paid creditors and the money necessary to pay all debts entitled to priority and cost of the proceedings, and the court in the order of confirmation must make findings of such facts in accordance with Form 62 annexed to the General Orders.

4. **Bankruptcy** ⟫328—**Time for filing claims in case of composition without adjudication to be fixed by court.**

There is no limitation in the Bankruptcy Act of the time for filing claims, where there is a composition without adjudication, and while it is not intended that claims should be allowed after confirmation, it is within the power of the court by notice to fix a reasonable time within which claims may be filed, and until such notice is given there is no bar.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

In the matter of Passow & Sons, alleged bankrupts. Gustave A. Kowalski and others appeal, as against Frank M. McKey, trustee, from an order disallowing certain claims. Reversed.

Howard M. Harpel, of Chicago, Ill., for appellants.

Arthur C. J. Chittick, of Chicago, Ill., for appellee.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

PAGE, Circuit Judge. Consideration of the petition for rehearing brought further to our attention the singular condition of the record. Upon granting a rehearing, we directed that additional portions of the record be certified to this court. This is an appeal from the order of disallowance of certain claims, on the sole ground that they were filed after confirmation of a composition, by persons not scheduled.

[1] After a contest before the referee from September, 1916, to June, 1917, solely on the question of insolvency, bankrupt asked and

obtained, on June 2d, an order staying adjudication. On June 14th, schedules were filed and a reference asked for the purposes of calling a meeting of creditors for the examination of officers, for the allowance of claims, and consideration of an offer of composition. On the same day, reference was made to S. C. Eastman, referee, who gave the following notice to creditors (printed in the Chicago Evening Post of June 16th):

"Notice is hereby given that on the 14th day of June, 1917, bankrupt herein filed its petition for a meeting to consider a composition, which was duly referred to me, and the said meeting will be held on the 29th day of June, 1917, at 10 o'clock in the forenoon, at my office, Room 907 Monadnock Block, 53 West Jackson Boulevard, in Chicago, Illinois, at which time the creditors of 'said bankrupt may attend, consider said composition, examine the bankrupt, file their claims, and transact such other business as may properly come before the said meeting."

This was a composition before adjudication, and section 12a of the Bankruptcy Act (Comp. St. § 9596) required that, after the filing of the schedules, the court should call a meeting of creditors for the allowance of claims and the examination of the bankrupt. The notice did not call a meeting for the allowance of claims; the only reference to the claims was that creditors might file their claims. Creditors were not advised that it would be necessary for them to have their claims allowed before they could vote upon a composition. We are of opinion that, as a call of a creditors' meeting for the allowance of claims, preliminary to the consideration of composition prior to adjudication, as required by section 12a, the notice was wholly insufficient. No other notice of a meeting of creditors for the allowance of claims was ever given. In giving the notice, the idea uppermost in the mind of the referee, evidenced not only by the notice, but also by the record of the meeting, was that it was a meeting for the consideration of a composition; but such a proposition could not be submitted under the terms of section 12a until after the meeting for examination of bankrupt's officers.

[2] The notice did not attempt to advise creditors of the terms of any composition offer, and no composition offer was in fact made until August 20th, 50 days after holding the meeting on June 29th. While there was on August 20th an offer to creditors, there never was at any time a petition as provided in Bankruptcy Form 60, containing a prayer that a meeting of creditors might be called to act upon the proposal for a composition. Form 60 and all other forms prescribed by the Supreme Court pursuant to the provisions of section 30a (Comp. St. § 9614) are, as provided in General Order XXXVIII, to be observed and used. The forms and orders have the force and effect of law. In re Gerber, 186 Fed. 693, 108 C. C. A. 511; Sabin v. Blake-McFall Co., 223 Fed. 501, 139 C. C. A. 49. The provision in General Order XXXVIII, that the forms are to be observed and used with such alterations as may be necessary to suit the circumstances of any particular case, does not mean that they may be ignored, avoided or unnecessarily changed, as seems to be urged by counsel for appellant. If a referee or a District Judge might reject the prescribed forms and use any form made by himself, regardless of any necessity for chang-

300 F.—35

ing the court forms, then section 30a would amount to nothing. There can be no valid call of a meeting for the purpose of considering a proposition for a composition before adjudication unless and until the terms of the proposed composition, substantially as provided for in Form 60, have been submitted to the court. The record of the meeting of June 29th is as follows:

"On this 29th day of June A. D. 1917, this cause coming on for a meeting of the creditors to consider a composition, and it appearing to the court that due notice of the said meeting of the creditors of the bankrupt has been given by mailing notices to all creditors named in the schedule at least ten days before this date, and by publication in the Chicago Evening Post, the latter publication being at least one week before this date, as required by law and the rules of this court, it is therefore ordered that a meeting of the creditors of said bankrupt to consider a composition be held according to said notice.

"Whereupon, pursuant to said notice, the meeting of creditors to consider a composition was held at room 907 Monadnock Block, Chicago, Illinois, being the office of the referee on the 29th day of June, A. D. 1917, at the hour of 10 o'clock a. m.

"Hearing held. Examination held.

"June 29, 1917. It is ordered that all claims be allowed as filed, subject to objection."

No report of that meeting was ever made to the court. No list of claims allowed at that meeting was ever filed with the court. The only offer of composition was filed August 20th, and was never submitted to the creditors by the court or the referee, and there is nothing in the record to show that it ever was submitted to all of the creditors, except the unverified statement of the bankrupt, asking for confirmation on Form 61, filed on September 6, 1917, wherein it said "it offered terms of composition to its creditors." Nothing was done after filing the offer of composition until September 6th, when confirmation was asked on Form 61. It concludes:

"The consideration to be paid by the bankrupt to its creditors, money necessary to pay all debts which have priority, and the costs of the proceedings, has been deposited with T. C. McMillan, clerk of the District Court of the United States, subject to the order of the judge,"

—and asks confirmation. On the same day, in the absence of the judge, the matter was referred to S. C. Eastman, referee—

"To fix a day on which parties in interest shall show cause, if any they have, before the judge in opposition to confirmation of the composition, give notice thereof to the creditors of the bankrupt, ascertain the material facts and circumstances relating to the proposed composition and report the same, together with his conclusions and recommendations thereon, to this court."

The referee's notice under date of September 6th, notified the creditors that the petition for confirmation of the composition had been duly referred to him and that he had fixed September 21, 1917, at 10 o'clock in the forenoon before Hon. Kenesaw M. Landis for hearing on said petition, at which time creditors might show cause, if any they had, why said composition should not be confirmed. Under date of September 20th, Referee Eastman made a report to the court, which we subdivide for the purpose of comment:

"I have the honor to report that on June 14, 1917, this case was referred to me for a composition before adjudication. On June 29, 1917, a meeting to

consider a composition was held in my office as required by law at which time claims were filed and allowed and the officers of the bankrupt examined."

That is the only thing ever said to the court about the meeting of June 29th.

"On August 20, 1917, the bankrupt filed its written offer of composition, the terms being 100 per cent. in notes, payable in three installments of 33⅓ per cent. each in six, twelve, and eighteen months, secured by all the property of the bankrupt to be placed in the hands of Frank M. McKey, as trustee. This offer of composition is hereto attached, marked Exhibit A."

Exhibit A showed the following:

"As security for the payment of the composition notes referred to, there shall be transferred to and vested in Frank McKey, as trustee, for the benefit of the creditors, the legal title to all of the assets and property belonging to the said alleged bankrupt under an appropriate agreement, containing the usual and ordinary covenants."

The referee's report did not call the attention of the court to that provision in the composition offer, nor did the referee call to the attention of the court the fact that there had been executed and acknowledged by bankrupt, under date of August 20th, the so-called "appropriate agreement" in the shape of a trust deed, conveying all of the property of the bankrupt, and that it contained many extraordinary covenants and agreements, such as authorizing McKey to pay in full all wages of employés and all priority claims, and provided for recognition by McKey of legal and equitable liens upon the property transferred to him, without any previous ascertainment thereof by the court.

"On September 6, 1917, a petition for the confirmation of this composition was filed, which was duly referred to me, and on the same day I set the hearing on this petition on September 21, 1917, before Hon. Kenesaw M. Landis, one of the judges of this court. Notices of this hearing were mailed to the creditors, as required by law. I find that a majority in number and amount of creditors who have filed claims have accepted this composition."

No composition sheet was presented to the court until December 6, 1917. Seven or eight additional composition sheets were filed thereafter, one as late as March, 1921. No composition sheet showed the date of filing or the allowance of any claim. The only disclosure of any date upon which any claim was filed or allowed is in a list certified by the referee under date of October, 1923, and placed in the supplemental record.

"The bankrupt claims the value of its assets is in excess of $300,000. The indebtedness scheduled amounts to about $102,000."

It seems curious that the referee, who had investigated the question of insolvency over a period of eight months, should have wholly withheld from the court any hint or suggestion as to what he discovered as to the value of the assets, but contented himself with telling the court what the bankrupt claimed. Possibly a suggestion as to the value of such information upon the question of confirmation may be found in the fact shown in the record, that within less than a year McKey had disposed of the property for $77,991.26, about 25 per cent. of what the referee told the court bankrupt claimed the assets were worth, and in the further fact in the record that although McKey had

paid out $58,169.37, only $15,562.67 had gone to the creditors in the shape of a 20 per cent. dividend. Partial explanation of this condition may be found in the following:

"The bankrupt has agreed to pay the attorneys for the petitioning creditors $2,000 in fees and $2,920.74 in expenses and has agreed to pay its attorney $5,000 in fees. There is due Barrow, Wade Guthrie & Co. accountants $686, and to C. H. Briot, court reporter, $217. The contest on the petition for adjudication was specially referred to me and hearings were held before me on 45 different days consuming over 133 hours' time. For these hearings I ask that a special fee of $1,000 be allowed me. The other costs and expenses are the usual commissions, fees and referee's office expenses."

These latter items appear to amount to $792.97. This amount is within $3,000 of the total payment to creditors. The request of the referee for a special fee of $1,000 was a request in direct violation of section 72 of the Bankruptcy Act. Considering the failure of the referee to present material facts and circumstances relating to the proposed compensation, as required by rule 4 of the District Court, it would seem that the following: "It is my opinion that this composition is for the best interests of creditors and should be confirmed"— should have but trifling weight in view of the following which concludes the report:

"No money has been deposited with the clerk to pay fees and expenses and the order confirming the composition should provide that the trustee pay the fees and expenses out of the first money coming to his hands."

This shows that the jurisdictional fact, set out in the petition for a confirmation, filed September 6th, viz. that the money necessary to pay all debts which have priority and the costs of proceeding have been deposited with the clerk of the court, subject to the order of the judge, was wholly false. Counsel for appellee seek to avoid the force of this finding by the suggestion that the trust deed to McKey was deposited with the clerk. We find no evidence of that fact and are of opinion that it would make no difference had that been done. Necessarily, in order that there might have been a deposit, as stated, to cover all claims having priority, such claims must have been ascertained, and yet the record shows no attempt to do so. On the contrary, the whole matter was left to McKey. The trust deed provided:

"Said trustee shall, as soon as may be after his acceptance of this trust, pay in full all wages of employés and all debts owing to any person or persons whose claims are entitled to priority under the laws of the United States relating to bankruptcy."

One of the composition sheets, filed in 1919, shows $697.50, wage claims having priority. The schedule shows $2,800 due for taxes, and there appear in the record other claims entitled to priority. The order entered by the District Court on September 21, 1917, is as follows:

"On reading and considering the report of Special Master S. C. Eastman on the petition of the bankrupt for confirmation of its composition with creditors, the court being fully advised in the premises, it is ordered that said report be and the same hereby is approved, and it is further ordered that the objections to the confirmation of the said composition be and the same hereby are overruled, and that the prayer of the petition be, and the same hereby is, granted. It is further ordered that this matter be referred to Referee in

Bankruptcy S. C. Eastman, for the purpose of considering and allowing claims."

[3] We are of opinion that, until bankrupt had complied with the provisions of section 12b, the court was without jurisdiction to entertain an application for the confirmation of a composition. We are also of opinion that it is within the contemplation of section 12d that the court must affirmatively find the matters therein set out before it is authorized to make an order of confirmation. Section 12c provides that .a confirmation of a composition shall discharge the bankrupt from his debts other than those agreed to be paid by the terms of the composition and not affected by a discharge. It is therefore important that the record shall show affirmatively the three matters specified in section 12d, and that Form 62, as provided and directed by the Supreme Court, shall be the form of the order of confirmation.

Section 12e provides that upon a confirmation of a composition the consideration shall be distributed as the judge shall direct and the case be dismissed. The Supreme Court provided Form 63 to govern the practice under that provision of the statute. It is conceded that even up to this time, nearly seven years after the alleged confirmation, no order of distribution or dismissal has ever been made. The record shows that, presumably pursuant to the provision in the alleged order of confirmation, referring the matter to the referee in bankruptcy for the purpose of considering and allowing claims, over 20 claims, aggregating nearly $20,000, were allowed on the very day of confirmation. The administration of the estate thereafter proceeded as though there had been no composition, except that, when it was desired to have money paid, an order was made upon the trustee in the trust deed.

December, 1917, G. W. Goff petitioned the court for the payment of a considerable sum of money to his firm. January, 1918, there was a general reference to Eastman to hear and pass upon objections to claims. In March, 1918, the receiver was ordered to pay Goff Bros. $567. Appellant says "the receiver" meant McKey, as trustee under the trust deed. The record shows that there were less than 70 claims filed on June 29, 1917. There were 205 filed and allowed up to October, 1922, 55 of which were filed after the alleged confirmation, and 52 had never been scheduled. The record also shows that although there had been no receiver or trustee and no adjudication, a large number of claims not scheduled and not filed until 1918—said to be for wages, etc., earned up to the day of composition—were allowed and directed to be paid as priority claims.

[4] We are of opinion that, with possible exceptions not here involved, it was the legislative intent that claims should not be allowed after confirmation. We are further of the opinion that the provisions of section 57n (Comp. St. § 9641), viz., "Claims shall not be proved against a bankrupt estate subsequent to one year after the adjudication," has no application to proceedings where there is no adjudication. There is no limitation in the Bankruptcy Act as to the time for filing claims where there is a composition before adjudication, and we are of opinion that it is within the power of the District Court, in such cases, by a notice, to fix any reasonable time within which creditors

must file their claims and have them allowed. Until such a notice is given there is no bar. No such notice was given in this case. It is the duty of every bankrupt to schedule all creditors, and, while by failure to schedule the bankrupt may contribute to defeat even a diligent creditor by placing him in a position where he cannot have personal notice, the bankrupt cannot take any advantage of the fact that he has failed to schedule the claim. We have in no way considered the merits of the claims here involved.

For the reasons stated, we are of opinion that the order of the District Court should be reversed, and it is hereby reversed, and the court is directed to proceed in harmony with this opinion.