### LEONARD v. BENNETT.
#### No. 9444.

Circuit Court of Appeals, Ninth Circuit.

Dec. 12, 1940.

S. J. Bischoff, of Portland, Or., and Pat H. Donegan, of Burns, Or., for appellee.

Before GARRECHT, HANEY, and HEALY, Circuit Judges.

GARRECHT, Circuit Judge.

Samuel R. Bennett, appellee herein, on December 22, 1938, filed in the District Court of the United States for the District of Oregon a "Debtor's Petition for Composition or Extension under Section 75, Act of March 3, 1933." The petition was attested by the debtor and was accompanied by the requisite schedules and oaths. On December 31, 1938, appellant C. H. Leonard, who, as second mortgagee, is a secured creditor of the debtor, filed in the lower court a motion to dismiss the petition of the debtor on the ground, in particular, that the debtor was not a farmer within the meaning of the Farmer-Debtor Act (Section 75 of the Bankruptcy Act, 11 U.S.C.A. § 203).

The District Court, on January 25, 1939, made an order referring said motion to Richard E. Kriesien, Conciliation Commissioner for Harney County, Oregon, for consideration. After a hearing the commissioner concluded that the debtor was not a farmer, as that term is defined in Section 75 of the Act.

On March 27, 1939, the debtor filed a proposal for composition and extension, and on the same date also filed his petition for review of the finding of the Conciliation Commissioner, alleging that the evidence was sufficient to show that he was a farmer within the meaning of Section 75 of the Act. On April 15, 1939, the District Court entered an order in which it reserved its decision on the question of whether the debtor is a farmer as defined by the act,. and referred the case back to the conciliation commissioner "to determine whether or not the proposal of the debtor to his creditors already made or as the same may be modified includes an equitable and feasible method of liquidation for the secured creditors, and for financial rehabilitation for the debtor." A month later the debtor submitted an amended proposal for composition and extension to the commissioner, who found it to be inequitable because it proposed that the secured creditor, appellant Leonard, accept $4,000 with interest thereon at the rate of 6 per cent. per annum as a full and complete satisfaction and discharge of

John W. McCulloch and Hugh L. Biggs, both of Portland, Or., for appellant.

his judgment.[1] The debtor claimed that proceeds received from the farms, while operated by Leonard, if accounted for, would reduce the indebtedness due Leonard to approximately $5,000 or $6,000. Appellant Leonard refused to consent to the amended proposal.

Motions to dismiss the debtor's petition for composition and extension made by the objecting creditors, C. H. Leonard and Federal Land Bank of Spokane, were denied on October 19, 1939, "without prejudice to the right of the creditors to raise the question of probability of rehabilitation in the event that the debtor should file an amended petition under Subdivision s of the Farmer-Debtor Act," and by the same order the exceptions of the debtor to the reports of the conciliation commissioner were sustained. Leave was granted the debtor to file an amended petition under subdivision s of the Act, because "efforts to effect a composition under Subdivisions a to r of the Act have failed by reason of the failure of the debtor to obtain the consents of the creditors as required by law."

On November 14, 1939, there was filed by debtor Bennett in the District Court an amended petition, which stated that his occupation was that of a farmer and that "he is personally bona fide engaged primarily in farming operations (or the principal part of his income is derived from farming operations)." On the same day the District Court adjudged the debtor to be a bankrupt. The question of probability of rehabilitation of the debtor was not raised by the creditors of appellee.

C. H. Leonard has appealed to this court from the District Court's order of October 19, 1939, and also from that of November 14, 1939. He relies chiefly (1) upon the contention that the debtor's petitions (a) for composition and extension of his indebtedness and (b) for adjudication in bankruptcy under the Farmer-Debtor Act do not state sufficient facts to sustain the District Court's jurisdiction, because "they do not allege that the debtor is or was *personally* engaged in *farming*

nor deriving the principal part of his revenue from farming as that term is defined in Subsection r of Section 75 of the Bankruptcy Act, as amended by Act, May 15, 1935," and (2) upon the contention that the debtor is not in fact a farmer within the meaning of the act.

In his original petition for composition and extension the debtor adhered to the language found in Section 75, sub. r of the Bankruptcy Act of 1933, which read as follows: "For the purpose of this section * * * the term 'farmer' means any individual who is personally bona fide engaged primarily in farming operations or the principal part of whose income is derived from farming operations, and includes the personal representative of a deceased farmer; * * *." 47 Stat. 1473.

The pertinent part of the debtor's petition reads: "The petition of Samuel R. Bennett of Burns, in the County of Harney, District, State of Oregon, who is at present employed as a District Grazier by the Division of Grazing of the Department of Interior at Burns, respectfully represents that he is personally bona fide engaged primarily in farming operations (or that the principal part of his income is derived from farming operations) as follows: * * *."

It is objected by the appellant that the petition failed to show that the debtor was an individual who was entitled to the benefits of Section 75 of the Bankruptcy Act as amended in 1935 and that, as a result, the lower court was lacking in jurisdiction to entertain the petition. In explanation of his objection appellant contends that the petition does not allege that the petitioner is personally engaged in any of the occupations mentioned or enumerated in Section 75, sub. r, as defined in 1935. The 1935 version of subsection r of the Act reads as follows: "For the purposes of this section * * * the term 'farmer' includes not only an individual who is primarily bona fide personally engaged in producing products of the soil, but also any individual who

---

[1] In an action brought by appellant to foreclose his mortgage, judgment was granted in the principal sum of $9,912.13 with accruing interest at 8 per cent. per annum from December 1, 1938, together with the costs and disbursements of the suit. On January 30, 1939, subsequent to the filing of debtor's petition in the District Court, there was held a sheriff's sale of the property, at which appellant was the highest bidder. The Circuit Court for Harney County, Oregon, withheld confirmation of the sale because of the proceedings being conducted by appellee in the District Court under Section 75 of the Bankruptcy Act.

is primarily bona fide personally engaged in dairy farming, the production of poultry or livestock, or the production of poultry products or livestock products in their unmanufactured state, or the principal part of whose income is derived from any one or more of the foregoing operations, and includes the personal representative of a deceased farmer; * * *." 49 Stat. 246, 11 U.S.C.A. § 203, sub. r.

■ The sufficiency of the language of the petition was not challenged in the court below, but is questioned for the first time by appellant in his brief. The objection that the allegations are insufficient to show jurisdiction may be raised for the first time on appeal (United States v. Corrick, 298 U.S. 435, 56 S.Ct. 829, 80 L.Ed. 1263; City of New Orleans v. Howard et al., 5 Cir., 160 F. 393, 397; Magna Oil & Refining Co. v. White Star Refining Co., 3 Cir., 280 F. 52), but in such case the language is to be liberally construed for the purpose of sustaining jurisdiction. In Butchers' & Drovers' Stock-Yards Co. v. Louisville & N. R. Co., 6 Cir., 67 F. 35, 40, the court said: "* * * We think a liberal construction of the bill must be given to sustain the jurisdiction of the court at this time, in view of the fact that no plea to the jurisdiction was made below, and no question of the jurisdiction seems there to have been raised. * * *"

■ In challenging the jurisdiction of the District Court appellant submits that the words "farming operations" used by the debtor in his petition are not to be found in the 1935 amendment of subsection r of the Farmer-Debtor Act. Appellee Bennett in drawing up that petition employed, as mentioned heretofore, the language of subsection r as defined in 1933. The House Committee Report upon the 1935 amendment advances this explanation for the change: "The definition of the word 'farmer' is further clarified by the descriptive enumeration of individuals who are engaged in dairy farming, the production of poultry or livestock, or the production of poultry products or livestock products in their unmanufactured state, as well as those engaged in producing products of the soil or livestock; but it is not intended by such enumeration to exclude from the definition any other classes of individual primarily engaged in agricultural pursuits. To the contrary, it is the purpose of Congress to broaden the definition of the word 'farmer' beyond the boundaries of the present definition as heretofore interpreted and applied by the United States courts." H.R. No. 455, 74th Congress, 1st Sess., p. 2.

In First National Bank & Trust Co. v. Beach, 301 U.S. 435, 57 S.Ct. 801, 81 L.Ed. 1206, Mr. Justice Cardozo stated that the definition of a farmer as contained in the Act of 1933 was amplified by the amendment of 1935. After quoting the 1933 and 1935 acts, he said: "The only effect of the 1935 amendments of the statute, in so far as they have to do with the definition of a farmer was to make it clear that *farming operations* include dairy farming and the production of poultry and livestock products in their unmanufactured state as well as the cultivation of the products of the soil. There had been decisions to the contrary. * * * House Report, No. 455, 74th Congress, 1st Session, p. 2; Senate Report, No. 498, 74th Congress, 1st Session, p. 4. For the purpose of the case at hand the amendments may be laid aside and the simpler phraseology of the section as it stood at the beginning may be accepted as the test. Was respondent a farmer because '*personally bona fide engaged primarily in farming operations*' or because '*the principal part of his income was derived from farming operations*'?" (Emphasis supplied.) 301 U.S., at page 438, 57 S.Ct. at page 803, 81 L.Ed. 1206.

Thus, the Supreme Court in determining whether an individual was a farmer within the purview of the Farmer-Debtor Act made use of the identical expressions found in appellee's petition.

A District Court of the Seventh Circuit placed a similar construction upon the amended subsection r of the Act: "Under the Bankruptcy Act, § 75(r), as amended, 11 U.S.C.A. § 203(r), the term 'farmer' means any individual personally actually engaged primarily in farming operations or the principal part of whose income is derived from farming operations. The act, therefore, seems to indicate clearly that petitioner, although she is not an occupant of the farm, is one to whom the court may grant relief, as one whose chief income is derived from farming operations. * * *" In re Shonkwiler, D.C., 17 F.Supp. 697, 698.

■ The Bankruptcy Act defines a petition as "a document filed in a court of bankruptcy or with a clerk thereof by

a debtor praying for the benefits of this Act [title].". 11 U.S.C.A. § 1(24). Section 75, sub. c, states that a "petition may be filed by any farmer, stating that the farmer is insolvent or unable to meet his debts as they mature, and that it is desirable to effect a composition or an extension of time to pay his debts." 11 U.S.C.A. § 203, sub. c. In the case at bar appellee did state that he is insolvent or unable to meet his debts as they mature, and that he desires to effect a composition or extension of time to pay his debts under Section 75 of the Bankruptcy Act. But appellant points out that appellee's petition was fashioned after Form No. 65 as promulgated in 1933 (288 U.S. 646, 647) rather than as amended in 1936,[2] and suggests that this is a fatal defect. True, the forms prescribed by the Supreme Court in its General Orders in Bankruptcy have the force and effect of law and should be closely followed in the preparation of petitions (Sabin v. Blake-McFall Co. et al., 9 Cir., 223 F. 501); but Order No. 38 of the General Orders in Bankruptcy is not an iron-clad rule, as is apparent from its wording: "The several forms annexed to these general orders shall be observed and used, with such alterations as may be necessary to suit the circumstances of any particular case." 11 U.S.C.A. following section 53. In the case of In re Passow & Sons, 7 Cir., 300 F. 544, the court speaks of the necessity of *substantially* complying with the official forms, and in the case of Sabin v. Blake-McFall Co. et al., supra, this court held as follows: " * * * Counsel for the petitioner refer us to no decision, and our own research reveals none, in which it has been held that the character of the business of an alleged bankrupt corporation must be set forth in the phraseology of the bankruptcy act. While such would undoubtedly be the better practice, we think that any language, the fair and reasonable import of which is that the alleged bankrupt is a moneyed, or a business, or a commercial corporation, is sufficient. The allegation in the present petition that the alleged bankrupt is engaged in the 'general retail merchandise business' undoubtedly brings the corporation within the class of 'business' corporations which under the act may be adjudged involuntary bankrupts. To place upon the language used any other construction would be hypercritical." 223 F. at page 504.

In view of the intention of Congress in amending the Farmer-Debtor Act in 1935, as hereinbefore set out, we are of the opinion that the debtor substantially complied with the statute and the official form when he stated that "he is personally bona fide engaged primarily in farming operations (or that the principal part of his income is derived from farming operations)." Such allegation undoubtedly shows the jurisdictional facts contemplated by the act. Also, it might be noted that appellant lists no authorities in support of the proposition that the debtor's failure to use the precise language of § 75, sub. r of the Act rendered his petition fatally defective. As heretofore pointed out, when an objection that the jurisdictional allegations are insufficient is first raised on appeal, the averments will be liberally construed for the purpose of sustaining jurisdiction.

The foregoing discussion applies to appellant's criticism directed to the form in which appellee drew up his amended petition for adjudication in bankruptcy under subsection s of Section 75. The proceedings under subsection s are but a continuation of proceedings begun under other provisions of Section 75 (Bradford v. Fahey, 4 Cir., 76 F.2d 628), and if the original petition was sufficient to show the jurisdiction of the court, the jurisdiction continued. Moreover, no official form has been prescribed for use when petitioning for an adjudication in bankruptcy under Section 75 s.

The assertion made by appellant to the effect that the Congress amended subsection r of Section 75 because the Supreme Court had declared it to be unconstitutional in the case of Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593, 97

---

[2] Form No. 65 (at present Form No. 63), as revised in 1936 in order to conform to the language of the 1935 amendment of Section 75, sub. r, requires the petitioner to state as follows: "That he is primarily bona fide personally engaged in producing products of the soil (or that he is primarily bona fide personally engaged in dairy farming, the production of poultry or livestock, or the production of poultry products or livestock products in their unmanufactured state, or the principal part of whose income is derived from any one or more of the foregoing operations) as follows: * * *." 11 U.S.C.A. following section 53.

A.L.R. 1106, is obviously erroneous. To begin with, the constitutionality of subsection r was not passed upon by the court, but, instead, that of subsection s. The reason for the amendment of Section 75 r is set forth in House Report No. 455, 74th Congress, 1st Sess., p. 2, heretofore noted and discussed. Since Congress amended that subsection for purposes of clarification and amplification only, we cannot agree with appellant that it was the duty of the District Court, sua sponte, to have dismissed appellee's petition for composition and extension because petitioner stated that he was applying for relief under Section 75, Act of March 3, 1933, rather than under Section 75 as amended in 1935.

We now proceed to examine appellant's contention that appellee is not a farmer.

Samuel R. Bennett, who was fifty-one years of age at the time of filing his petition for a composition or extension of his indebtedness, had been reared on his father's farm in Eastern Oregon, and except when he was away at school he worked on the farm. At the age of twenty-four he took a full-time position with the Forestry Service. That position he retained for fifteen years, until 1924, when he resigned in order to devote all of his time to operating a farm (denoted in the record as the Swick land) which is located on the outskirts of the City of Burns and which he had been operating through hired help from the time he acquired it in 1921. After leaving the Forestry Service he added two other tracts of farm land to his holdings, the Mace place in 1924 and the Thornburg place in 1927. In the acquisition of each of those farms he assumed outstanding mortgage indebtedness. He paid to appellant Leonard approximately $9,000, which sum represented a $6,000 mortgage on the Swick land, plus interest. The indebtedness owing to the Federal Land Bank of Spokane on the Thornburg place and on the Mace place he substantially reduced. Operation of a dairy, the raising of cattle, and the growing of wild hay constituted appellee's farming activities, from which he was deriving a good income. But the business depression in 1929 was followed by a sharp decline in the value of farm products. To meet installments on his debts Bennett was forced to borrow substantial sums from appellant, giving as security second mortgages on the properties.

Early in the year 1930 Bennett moved away from his farm properties "because," to use his own words, "I became involved so heavily and had so much against the land. There was a mortgage on my cattle. I got a chance to go into a big ranch [referred to as the Trout Creek place] in the south end of the county, and I left the land to Mr. Leonard to sell the crop and apply all the money on the mortgages as they became due." Bennett testified that Leonard has operated the lands since 1930 "under the understanding that all receipts from the land were to be turned over to the indebtedness." As to events occurring thereafter, we quote further from the uncontroverted testimony of appellee. He recounted: "The dairy cows that were on the Swick place were run on the Trout Creek place. During the five years I was on the Trout Creek place I struck five dry years. It was a losing proposition on account of the drought. * * * Then I moved back here and run cattle for my daughter for about a year. I have lived in the vicinity of Burns ever since. From the time I came back to Burns until I took the grazing position, I was contracting in the summer for hay and run these cattle for my daughter. * * *"

Appellee's departure from his farm lands was not made with any idea of abandonment or with an intention of relinquishing ownership in favor of his second mortgagee. He testified: "When I turned the land over to Mr Leonard, I did not intend to give him the lands, but intended to return whenever I got in a place I could; but we struck five dry years and I lost all my cattle, and I then returned here. * * * At that time the indebtedness was such it was impossible for me to take it up."

He reiterated a number of times his intention of returning to his farms when he was financially able to do so.

Mrs. Alice Bennett, wife of appellee, corroborated the explanation furnished by appellee for his departure from his farms. When she was on the stand, the following discussion took place.

"Q. Can you state how the management was turned over to Mr. Leonard, and for what reason? A. Well, we knew if we kept our cows here and they ate up the forage that it could not be applied on the mortgage and the cows were

already mortgaged so we thought if we left, some day we could come back again.

"Q. Was it your intention when you went to Trout Creek to return to farm this land if you were financially able? A. Yes, we always had our home here.

\* \* \* \* \*

"Mr. Cook: When did you give up that intention? A. We never gave it up.

"Mr. Cook: Did you move back to it? A. No, but we are living in the house that is on the land. We are living in the house that we lived in when we run the ranch."

From this uncontradicted testimony of both Bennett and his wife it is clear that the management and operation of the farm was turned over to appellant because such action appeared to be the best way of safeguarding the interests of all concerned. Under the agreement made with Leonard all of the income from appellee's farms was to be applied on the indebtedness, and with the earnings derived from his operation of the Trout Creek farm appellee was to provide for his family, which then consisted of his wife, two boys, and two girls, the boys being of the ages of six and seven and the girls fourteen and sixteen. It is apparent that Bennett entered into the arrangements with the second mortgagee for the primary purpose of affording him an opportunity to rehabilitate himself financially and maintain his status of farmer.

Does the fact of his employment as a district grazier negative appellee's allegation that he "is primarily bona fide personally engaged in farming operations"?

When Mrs. Samuel Bennett was testifying, the question was put to her: "What has been Mr. Bennett's occupation generally throughout his life time?" She responded, "Stock raising and farming." Appellee's testimony and the summary account of his life history, heretofore related, bear out and support that statement. His work as grazier does not show an abandonment of farming; instead, the undisputed evidence indicates a determined effort to maintain his status as a farmer. His employment as grazier was entered upon to enable him to care for his family temporarily, while the entire net income from his farms was being applied to reduce the mortgage indebtedness.

The fact that Bennett stated that he would not immediately resign his position as grazier does not prevent him from being primarily engaged in farming. He testified that his two boys (who are now of the ages of sixteen and seventeen, approximately) "would partake in the management and handling of the ranches," while he personally directed the "running" of his places. He testified that he "would not have to withdraw any of the revenue from the operation of the ranches for living expenses," because his salary was sufficient to care for those expenses; that he would again do the farming in person when he was financially able to do so. Manifestly, he intends to retain his present employment only for the purpose of expediting the liquidation of his indebtedness. Farming will continue to be the occupation of principal concern to him.

Appellant insists that Bennett is not a farmer within the purview of the Farmer-Debtor Act because Bennett was not personally doing farm work when he made application for the relief offered by said act; and in support of his contention cites our decision in Shyvers v. Security-First Nat. Bank of Los Angeles, 9 Cir., 108 F.2d 611, 126 A.L.R. 674. The circumstances in that case were very different from the facts here. There the owner of farm lands in California, who sought to take advantage of the act, resided in England, and the lands were farmed by tenants who had no contact with the owner except through agents and attorneys, and it was held that the petitioning debtor "residing across the seas" did not come within the act.

In Sherwood v. Kitcher, 2 Cir., 86 F.2d 750, also relied upon by appellant, the debtor had resumed his former trade of moulder, making it his occupation of primary concern.

In the case of Noble v. Hopewell Nat. Bank, 3 Cir., 98 F.2d 623, at page 626, the court stated:

"\* \* \* Assuming, however, that a farmer by straitened circumstances is forced to leave his farm in order to support his family, we do not think that he is a farmer any the less, provided his absence be temporary, and there is nothing in the record to indicate more than temporary absence upon the part of Noble. Indeed, the length of time spent upon

the farm is not the only test. Sherwood v. Kitcher, 2 Cir., 86 F.2d 750, 751.

"In our opinion the decision of whether or not an individual is a farmer must turn upon consideration of all of the circumstances. * * *"

Considering all of the circumstances in the case at bar the absence of appellee must be regarded as temporary, albeit indefinite; for the evidence shows a determination on the part of the appellee not to withdraw from his occupation of farming but to return thereto as soon as he can rehabilitate himself and support his family.

 The "words of the statute to which meaning is to be given are not phrases of art with a changeless connotation. They have a color and a content that may vary with the setting," as was said in the case of First Nat. Bank & Trust Co. v. Beach, supra. In the case before us the intent and purpose with which the conduct of his farm was surrendered to his second mortgagee must be given great weight in determining the appellee's status. Bennett did not deed the property to the mortgagee; he did not abandon it; his absence from the mortgaged property was in furtherance of his desire and plan to rehabilitate himself with the aid of revenue from other sources so that he could regain possession of his lands and continue his farming. In determining whether Bennett is a "farmer" is must be remembered that the income from the farms during all the period they have been operated by Leonard was Bennett's income and has been applied on his (Bennett's) indebtedness, which had been contracted by him solely in connection with his farms; that during the five years that he was at Trout Creek appellee actively participated in farming, and that it was only as a victim of drought that he vacated that place; that the indebtedness on his farms had so mounted during his absence that he was unable at the time to resume control of them, but was compelled by circumstances to seek employment in another line of endeavor in order to provide for his family.

 Section 75 is an emergency measure enacted for the purpose of succoring farmers in distress. If actual and literal engagement in farming were required of the petitioner at the very moment that he invokes the assistance of the act, in the sense that he then must have a plow in his hand, the aim of the Congress would be rendered unavailing in numerous instances where it was intended to apply and afford relief. When the act was passed in 1933, one will remember that farmers throughout the country were being dispossessed of their lands because of seizure by sheriffs or because mortgagees, after default, had made entry under provisions of their mortgages. The act was intended to relieve the distressed farmer (provided, of course, he still had an interest in his farm, as defined in subdivision n of Section 75, 11 U.S.C.A. § 203, sub. n), even though at the time of the application, he had already been ousted from his lands and could not possibly be doing farm work there in person.

The foregoing opinion requires that the action of the lower court be sustained, and renders it unnecessary to discuss the motion to dismiss the appeal.

Affirmed.