## In re SCHERMERHORN.
### No. B–8161.

District Court, E. D. Washington, N. D.

Oct. 21, 1941.

Sam R. Sumner and Davis & Jeffers, all of Wenatchee, Wash., for Oregon Mortg. Co., Ltd.

LeRoy McCann, of Wenatchee, Wash., for farm debtor.

SCHWELLENBACH, District Judge.

This comes before me on exceptions to the report of the Conciliation Commissioner in which he denied the petition of the Oregon Mortgage Company praying the dismissal of the farm debtor's petition. The exception is based upon the Mortgage Company's contention that "the facts found by the Conciliation Commissioner conclusively show as a matter of law that Rollo Schermerhorn was not a farmer at the time he filed his petition herein as defined in Subsection r, Section 75, of the Bankruptcy Act of the United States." 11 U.S.C.A. § 203, sub. r. The findings of fact to which exception is taken are as follows:

"Rollo Schermerhorn, age 38, is married having two boys age 14 and 9, and has been a farmer for 20 years; he first went on the place in question in 1924 and has maintained his home thereon since; in 1930 he began trucking on the side and from 1930 to 1938 his income from trucking has varied from $200.00 to $700.00 per year and during the same period his farm has failed to produce any net profit. The tract was originally 19 acres, but now contains 16 acres, the said Oregon Mortgage Co. having released three acres which was sold. The tract of 16 acres includes 6 acres of orchard which is predominately apples, but with a few pear trees and two cherry trees; besides the orchard about 3½ acres is tillable land.

"In 1937 Mr. Schermerhorn became ill and in 1939 he leased the orchard to Otto Cook by a written lease whereby, if a profit was earned, he was to receive 150 boxes of apples; and in 1940 he again leased the orchard to Otto Cook under an oral lease, but the orchard did not 'pay', and Schermerhorn received nothing as rental in 1939 and 1940. During this time he only supervised insofar as was necessary to see that the provisions of the lease were carried out.

"In 1939 Schermerhorn took a Works Progress Administration job from which he received $44.00 per month which work was away from his farm. He continued this W. P. A. job until March of 1940. During 1940 he worked some 6 or 7 days on the orchard for which he received no wages, but also did some work for Mr. Cook on the orchard for which he was paid.

"In October of 1940 Mr. Schermerhorn was employed by Howe Sound Mining Co. at Holden, Washington, as 'nipper and mucker' and has since (been) and is now so employed, but now is a 'miner.' During this time he has boarded at Holden, some 70 to 80 miles from his farm, but his wife and two boys continued to reside in the five room residence located on the farm.

"During the year 1941 the orchard received no care or attention and has been condemned by the State Horticulture department. Mr. Schermerhorn has no intention of caring for the orchard, but would care for two cherry trees on the premises. He desires to put the land to diversified farming, raising alfalfa, strawberries, potatoes, and dairying, and believes he can make a success of it. The orchard received good care until this year and it is now almost too late for the land to produce

anything in 1941, except possibly some from pasture.

"The reason for the failure of the orchard is because it is mostly of poor varieties 38 years old with only 60 delicious trees; the trees have been gradually dying off.

"Three years ago Mr. Schermerhorn rented a patch of about 1⅓ acres which was put into strawberries for which the renter improved the premises by clearing of bolders. The same arrangement continued in 1939 and it was not until 1940 that Schermerhorn himself ran the strawberry patch. In 1940 this patch produced $350.00 Gross and $160.00 Net which does not take into consideration personal labor of the Schermerhorns. This $160.00 net from the Strawberry patch is the only income the land has 'netted' since 1930.

"Mr. Schermerhorn originally paid $6,-500 for the 19 acre tract and the original mortgage to Oregon Mortgage Co. was $2,-000 of which $120.00 was paid when 3 acres was sold. The mortgage drew interest at 8% until reduced in 1936 to 6%. Since about 1937 Schermerhorn has not paid any taxes on the realty and the Oregon Mortgage Co. has paid them. The place has a free water right which only requires upkeep. The present value of the premises as testified by Schermerhorn is $600.00 and as testified by Otto Cook is $700.00.

"Mr. Schermerhorn regards his employment by Howe Sound Co. as temporary and intends to return to the farm if he can get the debts scaled down to its worth.

"Mr. Schermerhorn has no spray system and few tools for caring for an orchard and has no team and few tools for diversified farming.

"The soil of the farm is productive and it would make a good diversified farm and the Schermerhorns are devoted to it.

"The Oregon Mortgage Co. has refused to give a waiver for removal of the trees.

"Mr. Schermerhorn testified that a Mr. Francis had made an offer of $500.00 down, for the place."

The Statute involved reads as follows: Section 75, sub. r, of the Bankruptcy Act, 11 U.S.C.A. Sec. 203, sub. r:

"For the purposes of this section, section 4(b) [section 22(b)], and section 74 [section 202], the term 'farmer' includes not only an individual who is primarily bona fide personally engaged in producing products of the soil, but also any individual who is primarily bona fide personally engaged in dairy farming, the production of poultry or livestock, or the production of poultry products or livestock products in their unmanufactured state, or the principal part of whose income is derived from any one or more of the foregoing operations, and includes the personal representative of a deceased farmer; and a farmer shall be deemed a resident of any county in which such operations occur."

The Mortgage Company in its brief cites three cases in support of its position: Sherwood v. Kitcher, 2 Cir., 86 F.2d 750; In the Matter of Davis, D.C., 22 F.Supp. 12; In the Matter of Olson, D.C., 21 F. Supp. 504. The Mortgage Company also refers to the case of Leonard v. Bennett, 9 Cir., 116 F.2d 128, 134, which it attempts to distinguish from the case at bar.

I have examined the three cases cited by the Mortgage Company in support of its position, and it seems to me apparent that even if the Leonard v. Bennett case can be distinguished from this case on fact, the rule of law laid down in that case is so contrary to the rules enunciated in the three cases upon which the Mortgage Company relies, that a District Court in this Circuit is prohibited from accepting any of the three cited cases.

My real problem is to determine whether the facts of the Leonard case are such as to make it controlling here. In that case, the original petition was filed on December 22, 1938. The petition was referred to the Conciliation Commissioner and after hearings before the Commissioner and before the Court, an amended petition was filed on November 14, 1939, in which the debtor alleged "he is personally bona fide engaged primarily in farming operations (or the principal part of his income is derived from farming operations)." The question before the Court is whether or not debtor was a farmer within the meaning of the above quoted Statute.

The facts revealed in the opinion pertinent to this inquiry are:

That the debtor moved away from his farm properties early in the year 1930. The dairy cows were taken by the debtor to another ranch, but on account of the drought, the use of them was abandoned after five years. The property involved in the case was turned over to the second mortgagee who operated the property under the understanding that the receipts

were to be applied on the indebtedness. After five years the debtor returned and lived upon the property but never farmed it. He then hired out as District Grazier to the Division of Grazing of the Department of the Interior and worked at that job exclusively up to the time of the filing of his petition. In the Opinion of the Court, Judge Garrecht stated the question as follows: "Does the fact of his employment as a district grazier negative appellee's allegation that he 'is primarily bona fide personally engaged in farming operations'?" He then proceeded to answer "no" to the posed question using the following language in part:

"His employment as grazier was entered upon to enable him to care for his family temporarily, while the entire net income from his farms was being applied to reduce the mortgage indebtedness.

"The fact that Bennett stated that he would not immediately resign his position as grazier does not prevent him from being primarily engaged in farming. * * * Manifestly, he intends to retain his present employment only for the purpose of expediting the liquidation of his indebtedness. Farming will continue to be the occupation of principal concern to him. * * *

"In the case of Noble v. Hopewell Nat. Bank, 3 Cir., 98 F.2d 623, at page 626, the court stated:

" '* * * Assuming, however, that a farmer by straitened circumstances is forced to leave his farm in order to support his family, we do not think that he is a farmer any the less, provided his absence be temporary * * *.'

"Considering all of the circumstances in the case at bar the absence of appellee must be regarded as temporary, albeit indefinite; * * * The act was intended to relieve the distressed farmer (provided, of course, he still had an interest in his farm, as defined in subdivision n of Section 75, 11 U.S.C.A. § 203, sub. n), even though at the time of the application, he had already been ousted from his lands and could not possibly be doing farm work there in person."

It seems to me that this is a much stronger case for the debtor than the Leonard case which I have just reviewed. In this case, the family of the debtor has lived upon the property at all times and the debtor, himself, lived there until he went to board at Holden. He personally operated the farm up until 1937 and personally supervised it after that time. In 1940, he personally ran the strawberry patch which produced a $350 gross and a $160 net income.

The findings of fact are:

"Mr. Schermerhorn regards his employment by Howe Sound Co., as temporary and intends to return to the farm if he can get the debts scaled down to its worth.

"The soil of the farm is productive and it would make a good diversified farm and the Schermerhorns are devoted to it."

It is true that there has been no net return from this farm for many years with the exception of $160 which the debtor netted on the strawberry patch last year. It must not be forgotten, however, that it was because of the fact that so many farms in the country were not netting a profit that the Frazier Lemke Act became law. This debtor has certainly been much closer to his property; he has devoted much more time to it than did the debtor in the Leonard case. If Bennett there was a farmer within the meaning of the Act, surely Schermerhorn here is a farmer within the meaning of the Act.

The exception to the report of the Conciliation Commissioner will be disallowed.