## STOLLER v. CLEVELAND TRUST CO. et al.

### No. 9180.

Circuit Court of Appeals, Sixth Circuit.

Feb. 1, 1943.

Elmer McClain, of Lima, Ohio (Elmer McClain, of Lima, Ohio, and J. F. Cavanagh, of Paulding, Ohio, on the brief), for appellant.

Kerns Wright, of Van Wert, Ohio, and Lorin L. Hogue, of Bryan, Ohio (Kerns Wright, of Van Wert, Ohio, Lorin L. Hogue, of Bryan, Ohio, and Hawley E. Stark and L. F. Laylin, both of Cleveland, Ohio, on the brief), for appellees.

Before HICKS, SIMONS and MARTIN, Circuit Judges.

MARTIN, Circuit Judge.

One week after appellant had filed a petition as a farmer-debtor, for the composition or extension of his debts under Section 75 of the Bankruptcy Act, 11 U.S.C.A., § 203, the appellees, as creditors, moved to dismiss the petition upon the ground that appellant is not a farmer as defined in the Act. The district judge referred the motion to the supervising conciliation commissioner for the district, as special master to take testimony and to report his findings of fact and conclusions of law.

The master reported that the farming operations of appellant had resulted in a net profit, and the conduct of his seed business in a net loss; and that his financial difficulties had been caused by the operation of his seed business. The master reported, as findings of fact, that the principal part of the income of appellant for the year preceding the filing of his petition had been derived from products of the soil and from livestock and livestock products in unmanufactured state; and that the appellant was primarily bona fide personally engaged in the production of products of the soil, livestock and livestock products in unmanufactured state.

The district judge sustained objections of the appellee-creditors to the report of the special master, and granted leave to the appellant-debtor to file, within twenty days, an amended petition under Section 4(a) of the Bankruptcy Act, 11 U.S.C.A. § 22(a), under penalty of dismissal of the debtor's petition upon his failure to do so. Appellant did not elect to file an amended petition; his original petition was accordingly dismissed at his cost; and he has prosecuted an appeal to this court.

In a memorandum opinion, the district judge concluded that appellant "was basically, fundamentally and primarily engaged in the wholesale and retail seed business; that his interests lay there; that his energies and attention were primarily devoted there; and that instead of being personally engaged in the business of farming he was personally engaged in the seed business"; that his principal income for a period of years prior to the filing of his petition had been derived from the seed business; and that "the substantial portion of his indebtedness that brought him to the bar of the bankruptcy court was incurred in the operation of that seed business." Citing Beamesderfer v. First National Bank and Trust Co., 3 Cir., 91 F.2d 491.

Supervision of farming operations, through instructions by appellant to his foreman and workmen on the farm before he proceeded to the conduct of his seed business in the morning, was deemed by the district judge insufficient to constitute appellant a farmer-debtor entitled to the full benefits of the Act. Citing Baxter v.

Savings Bank of Utica, 5 Cir., 92 F.2d 404. The observation was made that, in the off-season when his time and attention were not wholly concerned with the seed business, appellant devoted more time to his farm; but that "there is very little in the record to indicate that he was personally engaged in farming or that he was basically and fundamentally a farmer," or that farming was his primary vocation (Citing In re Day, D.C., 10 F.Supp. 229).

From study of the record, we cannot concur in the conclusion of the district judge that appellant was not a farmer, as defined in Section 75, sub. r, of the Bankruptcy Act, 11 U.S.C.A., 203, sub. r;[1] but are in accord with the findings and conclusions of the master.

The authorities cited by the district court present facts far afield from those recorded in the instant case. Beamesderfer v. First National Bank & Trust Co., supra, disclosed a situation where the petitioner did not live on his farm, but had rented it out. The farm had not been cultivated for five years, but had been used only for pasture. The petitioner owned a tobacco warehouse in the town of his residence, and his occupation for fifteen years had been buying and selling leaf tobacco. Practically all of his income had been derived from the tobacco business. He was properly adjudged not to be a farmer entitled to the benefit of the Agricultural Composition and Extension Act.

Baxter v. Savings Bank of Utica, N. Y., supra, is of doubtful authority, in the light of the opinion of the Supreme Court in John Hancock Mutual Life Insurance Co. v. Bartels, 308 U.S. 180, 60 S.Ct. 221, 84 L.Ed. 176; but, however this may be, its factual situation bears no relevant resemblance to the instant justiciable controversy. The petitioner, Baxter, who was denied the benefits of a farmer-debtor status, was a Utica, New York, lawyer, who, eight months before filing his petition, had given up his law practice and, because of ill health, moved to Georgia, to a farm which he had previously acquired there. During residence on his farm, he merely superintended farming operations. The Court of Appeals probably took judicial notice that the new arrival, as a farmer, was a good lawyer.

In re Day, supra, was a case where the petitioner held not to be a farmer was a practicing civil engineer, and also superintendent and county surveyor, who owned but did not live upon a farm which he rented to a tenant who occupied and cultivated it. The civil engineer devoted his time almost exclusively to the practice of his profession, and derived his income about equally from his profession and his farm.

In the instant case, the appellant farmer-debtor, now 42 years old, has lived in Paulding County, Ohio, for about 29 years; during which time, he has always resided on a farm—first on his father's and, from the age of 22, on his own farm. The first farm owned by him consisted of 160 acres. He steadily increased his farming activities until, in 1936 and 1937, he was operating 1785 acres of farm land.

The appellant regularly did a considerable portion of his farm work and personally directed the operations of farms owned or rented by him. He threshed his own crops and those of some of his neighbors and, as an outgrowth of these combined operations, he started a small seed business, the gross volume of which was some two or three thousand dollars for the first year. In the course of sixteen years, his seed business reached a peak of over $350,000 in gross volume. The seed business exacted increasing demands upon his time, until he devoted somewhat more than half of his working hours to its care. During the rush season, the major portion of his time was devoted to this seed business, and during the slack season his farming operations were paramount in time consumption. At no time did he abandon active duties on his farm. He saw to the upkeep of improvements and the maintenance of the fertility of the soil which he farmed and, as the master put it, "followed all the practices of good husbandry."

---

[1] For the purposes of this section, Sec. 4, sub. b, 11 U.S.C.A. § 22(b), and Section 74, as amended, 11 U.S.C.A. § 202, the term "farmer" includes not only an individual who is primarily bona fide personally engaged in producing products of the soil, but also any individual who is primarily bona fide personally engaged in dairy farming, the production of poultry or livestock, or the production of poultry products or livestock products in their unmanufactured state, or the principal part of whose income is derived from any one or more of the foregoing operations, and includes the personal representative of a deceased farmer; and a farmer shall be deemed a resident of any county in which such operations occur.

There is controversy concerning his customary daily movements from his farm to the situs of his seed business in Paulding, Ohio; but it appears that his day began at the usual early hour for farmers, and that he constantly performed some regular farm routine, gave instructions for farm operations, and prepared and kept records of the same; more adequately, indeed, than he kept the books of his seed business. However varied his activities, it is apparent from the record that the industrious appellant applied a most substantial portion of his time to the work of a "dirt farmer." He plowed, planted and husked corn; sowed wheat and oats; drilled and harvested beets; mowed alfalfa hay and clover; and ran a tractor and a combine, threshing machine, binder and reaper. He did most of the farm repair work and gave attention to drainage and tiling problems. The usual custom of appellant, after completing his most pressing farm work and instructing the farm hands, was to proceed to his seed house between eleven and twelve o'clock, and to return around four or five o'clock in the afternoon for the resumption of his part of planting, plowing, or whatever might be the order of the day upon the farm.

The seed business is seasonal, and requires heavy buying during harvest time and considerable selling during the early spring. Appellant made buying and selling trips to other states; maintained a business office and warehouse facilities for storage, and equipment for cleaning and grading seeds. He employed one man in his seed business virtually all the time; and, at the peak period, acquired the services of three or four men, in the main using the same men whom he employed on his farms. Appellant's total gross seed sales, including the produce of his farms, totaled the approximate amount of $260,000 from May 15, 1939, to May 15, 1940. A Certified Public Accountant testified that the records of the seed business were insufficient to make possible an audit; but it is manifest that the financial straits of appellant were directly resultant from the operation of his seed business.

On the record before this court, it is not possible to determine accurately the source of appellant's income. Apparently, he kept his farm and his seed business records as a unit. He testified that the income statements which he prepared for the creditor banks were based on his combined operations. His testimony indicates that the major portion of his net income was derived from farming operations, but this testimony is neither established nor disproved by his own records. His reports to the Department of Agriculture indicate that his farming operations were profitable; and the fact that the preponderance of his debts were weighted upon him from the seed business is corroborative of his assertion that the principal part of his income was derived from farming.

The Act of Congress invoked by appellant must be liberally construed to give the debtor the full measure of relief afforded by Congress, "lest its benefits be frittered away by narrow formalistic interpretations which disregard the spirit and the letter of the Act." Wright v. Union Central Life Insurance Co., 311 U.S. 273, 279, 61 S.Ct. 196, 200, 85 L.Ed. 184. See, also, John Hancock Mutual Life Insurance Co. v. Bartels, 308 U.S. 180, 60 S.Ct. 221, 84 L. Ed. 176; Kalb v. Feuerstein, 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370; Chapman v. Federal Land Bank of Louisville, Ky., 6 Cir., 117 F.2d 321, 325.

The Supreme Court, in First National Bank v. Beach, 301 U.S. 435, 438, 439, 57 S.Ct. 801, 803, 81 L.Ed. 1206, has declared that, in determining in every case of this character whether the petitioner is a farmer because "personally bona fide engaged primarily in farming operations" or because "the principal part of his income was derived from farming operations," the totality of the facts must be considered and appraised. The Supreme Court would not attempt to fix the meaning of either of the two branches of the definition considered in the abstract, saying that the two are not equivalents but are used by way of contrast. The words "primarily engaged" in the first branch of the definition, and the words "income derived from farming operations" in the second, were said not to constitute terms of art. Mr. Justice Cardozo wrote: "A farmer remains a farmer, just as a lawyer remains a lawyer, though the returns of his investments, while not enough to keep him going, are larger, none the less, than the profits of his labor. * * * We emphasize the fact afresh that the words of the statute to which meaning is to be given are not phrases of art with a changeless connotation. They have a color and a content that may vary with the setting. [Citing cases.] In the setting of this enterprise, the totality of its circum-

stances, the roots of the respondent's income go down into the soil."[2]

So, in the setting of the case here for decision and the totality of its circumstances, the roots of appellant's income would seem to go down into the soil. He is, therefore, entitled in full measure to the relief provided by the Act of Congress of May 15, 1935, c. 114, Sec. 3, 49 Stat. 246, 11 U.S. C.A., § 203, sub. r.

The order of the district court is reversed and the cause is remanded for proceedings in conformity with this opinion, so as to grant appropriate relief pursuant to the petition of appellant as a farmer-debtor.

[2] For application of this doctrine by courts of appeal, see Leonard v. Bennett, 9 Cir., 116 F.2d 128, 135; Benitez v. Bank of Nova Scotia, 1 Cir., 125 F.2d 523, 529.