## JOHN HANCOCK MUTUAL LIFE INSURANCE CO.
## *v.* BARTELS.

No. 33.   Argued November 9, 1939.—Decided December 4, 1939.

Mr. L. M. Bickett, with whom Messrs. John H. Bickett, Jr. and Byron K. Elliott were on the brief, for petitioner.

Messrs. T. E. Mosheim, Elmer McClain, and William Lemke, with whom Messrs. Alfred Aram, Harold M. Sawyer, and Francis R. Taylor were on the brief, for respondent.

MR. CHIEF JUSTICE HUGHES delivered the opinion of the Court.

In this proceeding brought by a farmer under § 75 of the Bankruptcy Act, the District Court dismissed the debtor's petition. The Circuit Court of Appeals held that this action was contrary to the requirements of the statute and directed the proceeding to be reinstated. 100 F. 2d 813. Because of conflict in the rulings of the Court of Appeals of the Fifth Circuit, due to the differing views of the judges composing the court in the cases cited,[1] and because of the importance of the question, we granted certiorari, 307 U. S. 617.

Respondent Bartels presented his petition to the District Court on December 2, 1937, asking that he be afforded an opportunity to effect a composition or exten-

---

[1] See Baxter v. Savings Bank of Utica, 92 F. 2d 404; In re Henderson, 100 F. 2d 820; Wilson v. Alliance Life Insurance Co., 102 F. 2d 365.

sion of time to pay his debts under § 75. The court referred the matter to a conciliation commissioner, directing the debtor to appear before the commissioner and to submit to such orders as might be made in proceedings under that section. A meeting of the creditors was held on December 21, 1937, at which the debtor was present and was examined. It appeared that his debts amounted to about $10,000 of which about $8,000 (including interest and attorney's fees) was owing to the John Hancock Mutual Life Insurance Company and was secured by a lien upon his home. As the debtor was unable to obtain an agreement with a majority of his creditors in number and amount, he notified the commissioner that he would apply to be adjudged a bankrupt under subsection (s) of § 75. That application was filed on January 10, 1938. The debtor asked that "his property be appraised," that "his exemption be set aside to him" and that he be permitted "to retain possession of his property under the supervision of the court." On the same day, the District Judge entered an order adjudging the debtor a bankrupt and requiring further proceedings before the commissioner acting as referee under subsection (s).

On March 23, 1938, the John Hancock Company moved to set aside the adjudication and to dismiss the debtor's petition on the ground that the debtor was not entitled to avail himself of the provisions of subsection (s); that he had not presented any feasible plan for a composition and extension of his debts, and that his petition "was not filed in good faith" or "with any hope or expectation of working out his debts and paying up his delinquencies but apparently for the sole purpose of hindering and delaying his creditors." The Company also alleged that at the fair market value of the real property held by it as security there was no equity for the debtor and that the Company would suffer irreparable loss unless the adjudication was set aside and the proceeding dismissed.

The debtor denied these allegations and alleged that the land on which the Company had a lien was worth unimproved more than $7,000 and that the improvements were worth $6,000 and that he thus had a large equity which would be lost to him unless he obtained the benefits sought under the applicable law.

At the hearing of the motion on April 5, 1938, the court received the evidence previously taken before the commissioner and additional testimony. Thereupon the motion was granted. The District Judge said in his opinion that the debtor had not made any proposal which could be construed as a "good faith offer for an extension or composition" and hence the debtor was not entitled to be adjudged a bankrupt under subsection (s). The District Judge observed that the evidence was conflicting as to the value of the land (100 acres); that, separating the land from its improvements, certain of the debtor's witnesses placed its value at $70 an acre and the improvements at $5,000 or $6,000, while witnesses for the creditor valued the land at about $40 an acre and the improvements at about $2,000. He thought that there was no reasonable probability of the property being sold for enough to give any substantial equity to the debtor and accordingly found that there was no reasonable probability of the debtor's financial rehabilitation. In that view the District Judge concluded "that the order adjudicating the debtor a bankrupt under subsection (s) was improperly entered and should be set aside and the cause dismissed."

We think that the District Judge failed to follow the mandate of the statute and that the Circuit Court of Appeals was right in reversing the judgment and ordering the proceeding to be reinstated.

Subsection (s) of § 75 as amended by the Act of August 28, 1935,[2] prescribes a definite course of procedure. That

---

[2] 49 Stat. 943; *Wright* v. *Vinton Branch,* 300 U. S. 440.

subsection applies explicitly to a case of a farmer who has failed to obtain the acceptance of a majority in number and amount of all creditors whose claims are affected by a proposal for a composition or an extension of time to pay his debts. That was Bartels' situation. Provisions for proceedings by a farmer to obtain a composition or extension, when he is insolvent or unable to pay his debts as they mature, are found in subsections (a) to (r) of § 75. For that relief Bartels had presented his petition under subsection (c) and the District Court had approved the petition as properly filed. According to the report of the conciliation commissioner, to whom the matter was referred according to the statute, Bartels had appeared at the meeting of the creditors and had submitted to a detailed examination concerning his financial condition. He proposed to sell certain property and to apply the proceeds to the payment in part of the amounts due to the John Hancock Company, the secured creditor. He succeeded in obtaining an agreement with certain unsecured creditors for an extension but the secured creditor refused consent, as Bartels could not meet all his arrears. Bartels was thus precisely in the condition prescribed in subsection (s).

The subsections of § 75 which regulate the procedure in relation to the effort of a farmer-debtor to obtain a composition or extension contain no provision for a dismissal because of the absence of a reasonable probability of the financial rehabilitation of the debtor.[3] Nor is there anything in these subsections which warrants the imputation of lack of good faith to a farmer-debtor because of that plight. The plain purpose of § 75 was to afford relief to such debtors who found themselves

[3] What is said upon this point in Note 6 in *Wright* v. *Vinton Branch,* 300 U. S. 440, 462, was not essential to the opinion in that case and is not supported by the terms of the statute.

in economic distress however severe, by giving them the chance to seek an agreement with their creditors (subsections (a) to (r)) and, failing this, to ask for the other relief afforded by subsection (s). The farmer-debtor may offer to pay what he can, as Bartels did, and he is not to be charged with bad faith in taking the course for which the statute expressly provides. The only reference in § 75 to good faith is found in subsection (i), which relates solely to the confirmation of proposals for composition or extension when the court must be satisfied that the offer and its acceptance are in good faith and have not been made or procured by forbidden means or except as provided in the statute. That provision manifestly hits at secret advantages to favored creditors or other improper or fraudulent conduct.

As Bartels' case thus fell within subsection (s), he amended his petition and asked to be adjudicated a bankrupt as that subsection permits. He was so adjudicated. Bartels then asked, also as provided in subsection (s), that his property be appraised, that his exemptions be set aside to him as provided by state law, and that he be allowed to retain possession of his property under the supervision of the court, that is, subject to such orders as the court might make in accordance with the statute. The court failed to take that action. Instead of having the property appraised, the court received conflicting testimony as to value, discussed the chances of the debtor's rehabilitation and dismissed the petition and all proceedings thereunder.

The procedure under subsection (s) is intended to protect all interests. It provides, in paragraph (1), that after the value of the debtor's property has been fixed by the prescribed appraisal, the referee shall set aside the debtor's unencumbered exemptions and direct his retention of possession of the rest of his property subject

to all liens and to the court's supervision and control. Under paragraph (2), if there has been compliance with the statutory conditions, the court is directed to stay all proceedings against the debtor or his property for a period of three years, and during that time the debtor may retain possession of all or part of his property subject to the court's control, provided he pays a reasonable rental semi-annually. That rental is to be paid into court and is to be used first for the payment of taxes and the upkeep of the property and the remainder is to be distributed among the creditors as their interests may appear. If the court finds it necessary to protect the creditors "from loss by the estate," or "to conserve the security," the court may order any unexempt perishable property of the debtor, or any unexempt personal property not reasonably necessary for the farming operations of the debtor, to be sold at public or private sale, and the court, in addition to the prescribed rental, may require payments to be made by the debtor on the principal of his debts in the manner set forth. Then it is provided, in paragraph (3), that at the end of the three-year period, or at any time before that, the debtor may pay into court the appraised value of the property of which he retains possession, "including the amount of encumbrances on his exemptions, up to the amount of the appraisal, less the amount paid on principal," for appropriate distribution to his creditors. There is the proviso that upon the request of any creditor, or of the debtor, the court shall cause the debtor's property to be reappraised, or in its discretion set a date for hearing, and thereafter fix the value of the property in accordance with the evidence, and the debtor shall then pay the value so arrived at into court, less payments made on the principal, for distribution to his creditors. In that way, by the order of the court, the debtor may regain full possession and title of such property, the ascertained

value of which has thus been devoted to the payment of his debts. There is the further proviso, for the protection of secured creditors, that upon request in writing by any secured creditor the court shall order the property upon which the secured creditor has a lien to be sold at public auction. See *Wright* v. *Vinton Branch, supra,* pp. 458–461. The debtor is to have ninety days to redeem the property so sold by paying the amount for which it was sold, with interest, into court, and he may apply for his discharge as provided in the Act. If, however, the debtor at any time fails to comply with the provisions of the section or with any orders of the court made thereunder, or is unable to refinance himself within three years, the court may order the appointment of a trustee and direct the property to be sold or otherwise disposed of as provided in the Act.

The scheme of the statute is designed to provide an orderly procedure so as to give whatever relief may properly be afforded to the distressed farmer-debtor, while protecting the interests of his creditors by assuring the fair application of whatever property the debtor has to the payment of their claims, the priorities and liens of secured creditors being preserved. See *Wright* v. *Vinton Branch, supra; Adair* v. *Bank of America Assn.,* 303 U. S. 350, 354–357; *Wright* v. *Union Central Life Insurance Co.,* 304 U. S. 502, 516, 517.

We are not here concerned with questions which may arise in the course of the administration under the statute, but merely with the duty to follow the procedure which the statute defines and the District Court failed to observe. We hold that on his amended petition invoking subsection (s) Bartels was entitled to be adjudged a bankrupt and to have his proceeding for relief entertained and his property dealt with in accordance with that subsection.

188

The judgment of the Circuit Court of Appeals reversing that of the District Court and directing the proceeding to be reinstated is affirmed and the cause is remanded to the District Court with direction to proceed in conformity with this opinion.

*Affirmed.*