**In re BYRENIUS.**

No. 4464.

District Court, D. New Hampshire.

Dec. 8, 1939.

William A. Lackey, of Cambridge, Mass., for debtor.

Dwight Hall, of Dover, N. H., for Bank.

William A. Grimes, of Rochester, N. H., for creditors.

MORRIS, District Judge.

On October 21, 1938, the petitioner, Elsie R. Byrenius of Barrington, in the County of Strafford and State of New Hampshire, filed a petition under Section 75 of the Bankruptcy Act, 11 U.S.C.A. § 203, citing that she was primarily engaged in farming and entitled to the protection of the act.

Accompanying the petition was a schedule of her debts and an inventory of her property. The amount of secured claims $5,974.96; priority claims $182.79 and unsecured claims $2,760.07, making a total of $8,917.81. The property inventory amounted to $20,660. It is to be noticed that the only mortgage on the property is one in favor of the Strafford Savings Bank of Dover for $2,917.58. The remainder of the secured claims listed are attachments on the real estate. The priority claims are for taxes and wages. The petition was approved as properly filed and on December 13, 1938, was referred to Frank W. Peyser as Conciliation Commissioner for Strafford County.

Upon due notice containing a summary of the final inventory, which amounted to $19,730, the first meeting of the creditors was held April 19, 1939. Numerous creditors were present and the debtor was questioned to considerable length. The debtor presented a proposal for an extension the main features of which were an offer to pay 66⅔ per cent to secured creditors and 33⅓ per cent to unsecured creditors out of income on November 1, 1939, and full payment November 1, 1942. Claims of creditors were to be filed on or before May 17, 1939. At the adjourned meeting the Debtor's offer was rejected because the creditors were convinced that the proposed payment of November 1, could not be paid. The Debtor was advised by the Conciliator to dismiss her petition or to file a petition under subsection (s) of section 75 of the Bankruptcy Act, 11 U.S.C.A. § 203, sub. s.

Such a petition was filed June 12, 1939, setting forth the foregoing history of the case. On July 5, 1939, numerous creditors filed an answer setting forth that the Debtor was not a farmer within the meaning of the act; that there was no reasonable expectation that she could liquidate her indebtedness within three years, and that the petition was not filed in good faith.

This matter came on for hearing November 1, 1939, at which time the Debtor appeared in person and by counsel and was examined and cross-examined by counsel for certain creditors.

242

Section 75, sub. r, 11 U.S.C.A. § 203, sub. r, defines the word "Farmer" as follows: "For the purposes of this section, section 4(b) [22(b)], and section 74 [202], the term 'farmer' includes not only an individual who is primarily bona fide personally engaged in producing products of the soil, but also any individual who is primarily bona fide personally engaged in dairy farming, the production of poultry or livestock, or the production of poultry products or livestock products in their unmanufactured state, or the principal part of whose income is derived from any one or more of the foregoing operations."

Prior to the purchase of the premises in Barrington, September 22, 1936, the Debtor and her husband lived in Somerville, Massachusetts. Mrs. Byrenius testified that she was engaged in the advertising business and that her husband was a Christian Science practitioner. The purchase price of the property was $1,700. The buildings were ordinary farm buildings badly out of repair. The Debtor testified that she and her husband had since put about $19,000 into the property but an examination of her schedules of debts shows that many of the repairs have not been paid. At the time of the purchase of the property neither the Debtor nor her husband were farmers. The question is whether after three years operation she can now be held to be a farmer under the act. The Debtor testified that her income from her first year's operation was $1,200 on potatoes alone. The second year she raised poultry and eggs for the market but the evidence does not disclose what income she received from the same. This year she testified she devoted her efforts entirely to planting vegetables. She abandoned the poultry business from which she testified she expected to raise three thousand dollars before November 1, 1939, because the market had dropped off. She testified that she had set out 1,100 tomato plants, 1,400 hills of beans and a field of turnips and squash; that the yield was excellent but it does not appear that she was able to market any considerable amount of tomatoes or beans and at the hearing November 1, all she had to show for her year's work was a quantity of turnips and, as she estimated, about forty tons of squash, neither of which had been turned into cash. The work on the land was largely done by herself and her young son. The husband did the plowing and cultivating. There is no question but

what Mrs. Byrenius did a large amount of work on the place.

The Court not being satisfied with the testimony presented at the hearing November 1, had a further hearing on December 5, 1939, at which counsel for the parties appeared and practically the same testimony was given as at the former hearing with some additional facts with reference to the disposition of the vegetables on hand, the taxes and other indebtedness. It appeared that the market was flooded with squash, the going price less than a cent a pound and that no sales had been made by the Debtor of any considerable amount. Assuming that the Debtor marketed forty tons of squash and other vegetables, I cannot find that under the present market conditions that the Debtor will be able to pay anything on the two years' taxes already due or that she will be able to pay interest on the mortgage debt or pay the premium on the insurance on the buildings. All policies of insurance were cancelled by the insurance companies and the bank, holding the mortgage, placed an amount on the buildings sufficient to protect its claim.

The Debtor, as it appears, is in very bad financial condition. This is especially true because of the approaching winter and her inability to obtain any income from the farm before another year. According to the schedules filed the taxes for the year 1938, due and unpaid, amount to $152.79, and the taxes for the year 1939, unpaid, amount to $147.51. The only way the mortgagee can protect its mortgage debt is by the payment of these taxes and add the amount so paid to its original mortgage indebtedness. The Debtor's real estate is assessed, for the purposes of taxation, at $4,500 and the testimony tends to show that its salable value does not exceed $6,000. The only personal property on the premises consists of farming tools necessary for carrying on the farm and household furniture.

When the property was purchased the Debtor's husband was deriving an income from his profession of $500 a month and I am satisfied that they purchased the property with the expectation of establishing a summer home which in the main could be supported by farming operations. They expended much more money on the place than its ability to produce would warrant. For the past year and a half the husband has received no substantial income from

his profession and the parties have been left to such income as they could produce from the farm.

The Debtor has filed a petition under subsection (s) of Section 75 of the Bankruptcy Act, praying that she be adjudged a bankrupt.

■ I find that the Debtor's principal source of income for the past three years has been derived from farming operations and that she is a "Farmer" within the meaning of the Act and entitled to its provisions.

■ I find that she is hopelessly insolvent and that she should be adjudged a bankrupt, and it is so ordered.

The only remaining grounds to be disposed of are the motions of the creditors that the proceedings be dismissed (1) because the Debtor is not a farmer and (2) because she cannot liquidate her debts from her income from the farm within the three years prescribed by the statute.

■ The first point I have already disposed of, as to the second point it is the opinion of the Court that the Debtor is so deeply involved that she cannot liquidate her debts within three years from the income of the farm. This being the fact the creditors argue that the petition is not filed in good faith and should be dismissed.

I cannot say that the Debtor is lacking in good faith in filing her petition. She apparently has worked hard and has faith in her ability to rehabilitate herself with her creditors.

It is my opinion she is altogether too optimistic, but even so, the Court cannot dismiss the petition.

Subsection (s) is specific in its terms. Benno Bartels v. John Hancock Mut. Life Insurance Company, 5 Cir., 100 F.2d 813; the same on appeal to the Supreme Court, 60 S.Ct. 221, 84 L.Ed. ——.

The Debtor has the right to have the matter referred to the Conciliation Commissioner, an appraisal made of her property and such as is exempt from attachment set off to her, and thereafter a reasonable rental fixed to be paid into court. Following these preliminary steps the Debtor and her property are subject to such orders as the Court may make in accordance with the terms of the statute.

The creditors' motion to dismiss is denied, and the action referred to the Conciliation Commissioner for Strafford County.