In re THOMPSON.

No. 1940.

District Court, W. D. Missouri, Central Division.

Dec. 4, 1942.

558

S. W. James, Jr., of Jefferson City, Mo., for debtor-bankrupt.

Gardner Smith, of Kansas City, Mo., for secured creditor Union Central Life Ins. Co.

Eugene E. Bowers, of Kansas City, Mo., for secured creditors Annie and Blanche Custer.

Sam M. Bushman, of Jefferson City, Mo., for secured creditors M. F. Kautsch, A. E. Kautsch, and Farmers Bank of Lohman, Mo.

COLLET, District Judge.

The question for determination is what disposition is to be made of a balance remaining in the hands of a Conciliation Commissioner at the end of the three year moratorium period after the farmer-debtor has repossessed the full title to the mortgaged property by paying to the mortgagee the appraised value of the security under the Frazier-Lemke Act, 11 U.S.C.A., § 203. The question arises on petition for review of an order of distribution made by the Conciliation Commissioner.

Thompson, a farmer, suffering from financial distress, filed his petition under the Act. No composition was effected and he amended his petition in accordance with subsection s thereof. In addition to creditors whose debts were secured by mortgages on the real estate and personal property Mr. Thompson had a number of unsecured creditors whose claims were in the form of notes and accounts. These unsecured creditors proved their claims and they were allowed. The annual rental was fixed at $665 which Mr. Thompson paid. The mortgaged assets were appraised and the statutory exemptions properly set off to him. The original appraisal of the mortgaged property at $7,296.67 was not questioned. No request for a re-appraisal or public sale was made. At the end of the three year period the debtor at the direction of the Conciliation Commissioner paid to the secured creditors the exact amount of the appraised value of the mortgaged property, $7,296.67, and secured an order vesting in him the full title and possession of that property. No complaint was made of the order of the Commissioner directing the payment of the appraised value of the mortgaged property as a prerequisite to obtaining the title thereto, although, as will be noted, the Commissioner had some funds in his hands belonging to the estate. The secured creditors, having received the appraised value of their security, if not satisfied, are at least not complaining audibly.

During the three year moratorium period the debtor paid to the Conciliation Commissioner a total of $1,995.00 as rental. After the payment of taxes and upkeep out of the rentals, there remained in his hands at the end of that period $1,597.58. As noted, the unsecured creditors had proved their claims and they had been allowed. The secured creditors did not at any time request that any part of their claims be paid out of the rentals. The Conciliation Commissioner ordered that the $1,597.58 balance of the rentals be distributed pro rata to the unsecured creditors. The debtor-bankrupt filed this petition for review of that order, claiming that the entire amount should be paid to him.

The case of In re Ezell, D.C., 45 F.Supp. 164, is cited in support of the Commissioner's order. In that case the conclusion was stated that the secured creditor was not entitled to any part of the rentals as interest in addition to the appraised value of the security. The question whether a secured creditor could be treated as a general creditor as to the difference between the value of the security and the total of his debt and

be paid a balance remaining of rental money on that account and in that capacity was not raised or decided. The secured creditor was claiming the rental money as interest on his claim during the three year moratorium and tacitly if not expressly conceding that payment as "principal" of more than the appraised value of the security would be unauthorized by the Act.

In regard to the disposition of money collected by the Conciliation Commissioner as rental, the Act provides: "Such rental shall be paid into court, to be used, first, for payment of taxes and upkeep of the property, and the remainder to be distributed among the secured and unsecured creditors, and applied on their claims, as their interests may appear."

The secured creditors are making no claim to the rental money hence they may be eliminated from consideration.

Obviously, the Act contemplates that any balance of rentals or net rentals are to be applied to the debtor-bankrupt's obligations. He contends that the Act requires that the application be first made on the secured debts, thereby compelling a reduction of the principal of those obligations, and that it does not permit the Commissioner to pay anything to unsecured creditors until the secured debts are satisfied. The obvious result of such a construction of the Act would be that all of the debtor's debts both secured and unsecured would be discharged and all of his mortgaged assets recovered upon the payment to the secured creditors, either from rentals or otherwise, of the reappraised value of the mortgaged property. The debtor contends that result was the intent of the Act.

The intent of the Act is difficult to determine. The most and best that can be done is to give to it the most logical and reasonable construction possible with the facilities available and leave to the reviewing courts the burden of correcting the judgment, if erroneous. And God help the trial judge who would take mortal offense at being corrected. For he is not only in imminent and constant danger of being mortally wounded, but has lost sight of the fundamental precept which should guide the judge—that it is of no importance that his individual judgment be vindicated when compared to the importance that the question be ultimately rightly determined. The present construction process will be laborious. The mildly interested need go no further.

■ First, is the debtor in a position to now debate the question he presents? He apparently did not question the propriety of the Commissioner's order that he pay into Court the full appraised value of the mortgaged property in addition to the balance of rent money on hand at the time that order was made. Neither did he seek a review of that specific order, but waited until the Commissioner undertook to distribute to the general creditors the balance of rentals before he formally presented his present contention that the balance referred to should have been applied to the principal of the secured debts and the reduction of the amount he was required to pay to secure the unencumbered title to the mortgaged property. Discredited, strict rules of procedure possibly would countenance a refusal to now consider the question. But the philosophy that substantial rights will be lost and the merits of a question be subordinated to forms and formality is not the rule or the practice in Federal Courts. The proceeding is still pending, no formal terms of Court are observed in Bankruptcy Courts and there is no possible prejudice which can result from considering the question now instead of then. The question must, therefore, be considered and determined.

■ Several general principles should be kept in mind in determining the proper construction of the Act. First, it has been determined that the Act requires the debtor to turn over all of his property to the Court and, excepting proper exemptions, permit all to be applied to the payment of his debts. "As stated by the Senate Judiciary Committee in reporting these amendments: '* * * subsection (n) brings all of the bankrupt's property, wherever located, under the absolute jurisdiction of the bankruptcy court, where it ought to be. Any farmer who takes advantage of this act ought to be willing to surrender all his property to the jurisdiction of the court, for the purpose of paying his debts, and for the sake of uniformity.'" Kalb v. Feuerstein, 308 U.S. 433, 442, 60 S.Ct. 343, 347, 84 L.Ed. 370. The record demonstrates that the debtor has done that. There is no suggestion that his schedules were fraudulent nor has there been any request for discovery of concealed assets.

■ Second, the priorities of liens and claims must be preserved: "The scheme of the statute is designed to provide an orderly procedure so as to give whatever relief may properly be afforded to the distressed

farmer-debtor, while protecting the interests of his creditors by assuring the fair application of whatever property the debtor has to the payment of their claims, *the priorities and liens of secured creditors being preserved."* (Italics supplied) John Hancock Mutual Life Insurance Company v. Bartels, 308 U.S. 180, 60 S.Ct. 221, 224, 84 L.Ed. 176. This was not done. For the net rentals were not applied first to secured debts. In that particular neither the rule last quoted nor the requirement of the Act that net rentals should be paid to creditors "as their interests may appear", was followed since the claims of the secured creditors were obviously superior. In addition to this statutory requirement and the quoted expression of the Supreme Court, another equitable principle that income from the security should be devoted to the discharge of the secured debt before it is applied on another obligation should be recognized. The rentals, in this instance, were from the secured creditors' security.

But the question arises—if the foregoing interpretation of the first sentence of Paragraph (2) of subsection (s) of the Act which relates to the distribution of rentals [1] is correct, why did Congress provide further in the same paragraph for the payment of net rentals on the principal of unsecured debts by the use of the following language: "The court, in its discretion, if it deems it necessary to protect the creditors from loss by the estate * * * may, in addition to the rental, require payments on the principal due and owing by the debtor to the secured or unsecured creditors, as their interests may appear, in accordance with the provisions of this title, and may require such payments to be made quarterly, semiannually, or annually, not inconsistent with the protection of the rights of the creditors and the debtor's ability to pay, with a view to his financial rehabilitation." The answer is reasonably clear that the statute contemplated the possibility that some instances would arise where there were no secured debts or where the secured debts were comparatively small, in which event there might be an extinguishment of those obligations with assets remaining for distribution to unsecured creditors. The fact that experience has encountered few, if any, such cases does not militate against an interpretation

which gives to the statute a broadly inclusive scope sufficient to include them.

Assuming, however, that the net rentals should have been applied to the principal of the secured debts, yet in this instance they were not and the debtor, with other funds discharged the lien of the preferred creditors. Should not the remaining assets be used to discharge the claims of those who are demandng their payment? Certainly if the debtor has the money he must pay these debts. Kalb v. Feuerstein, supra. But it is perfectly clear that the debtor had no funds or assets other than those surrendered to the Conciliation Commissioner and that the $7,296.67 which he paid into court to secure the release of the mortgaged property was borrowed for that purpose with the possible exception of a small amount earned from the use of the mortgaged premises during the three year period following adjudication in bankruptcy. It is likewise clear that the payment of the full appraised value of the mortgaged property into Court was under compulsion of the Commissioner's order that he do so.

There is no rule of Bankruptcy law which authorizes a Bankruptcy Court to require a bankrupt to borrow money to pay his debts as a condition precedent to receiving the benefits of bankruptcy. All that may be required is that he surrender all of his assets to the Court for that purpose.

As noted, there is a possibility that a small amount of the $7,296.67 consisted of money earned by the debtor from the use of the mortgaged premises during the moratorium period. It is unnecessary to determine that fact since money so earned would not under this Act be assets belonging to the estate. In the ordinary bankruptcy proceedings the earnings from assets belonging to the estate become assets subject to administration. But under this Act the fixed rentals take the place of the earnings which the mortgaged property might have made if operated by the Court during bankruptcy and hence constitute all that may be claimed for the estate for the use of the mortgaged property by the debtor.

There is no alternative other than the conclusion that the net rentals should have been applied on the principal of the

---

[1] "Such rental shall be paid into court, to be used, first, for payment of taxes and upkeep of the property, and the remainder to be distributed among the secured and unsecured creditors, and applied on their claims, as their interests may appear."

secured debts and that the debtor should have been required to pay into Court only the difference between the net rentals less cost of administration and the appraised value of the mortgaged property. The fact that the secured creditors will lose part and the unsecured creditors all of their claims, while unfortunate, is a well-known incident to bankruptcy.

The petition for review will be sustained and the cause remanded to the Conciliation Commissioner for further procedings not inconsistent herewith.