**In re LOOSE.**

No. 34590.

District Court, S. D. California, Central Division.

Sept. 28, 1943.

Allan J. Carter, of Pomona, Cal., for bankrupt.

Dailey S. Stafford, of Los Angeles, Cal., for secured creditors Henderson.

J. F. T. O'CONNOR, District Judge.

This is a review of an order determining commencement of a three year stay order period, by the conciliation commissioner, pursuant to section 75 sub. s (1, 2), of the Bankruptcy Act.

On July 2, 1937, the debtor, Harold H. Loose, duly executed and delivered to E. A. Henderson and Mattie Henderson, his wife, a certain promissory note in the amount of $10,000 secured by a deed of trust on certain real property consisting of a ten acre citrus grove, owned by Mr. Loose. The debtor defaulted on his obligation and in the interim of July 2, 1937, to October 11, 1939, various proceedings were filed and heard in the bankruptcy court with relation to the debtor's financial status and ability to liquidate the debt incurred. On July 27, 1939, Harold H. Loose filed his petition and schedules in this court pursuant to provisions of section 75 of the Bankruptcy Act as amended, 11 U.S.C.A. § 203, by which petition the debtor sought a composition or an extension of time to discharge his debts. On the same day an order was regularly entered, approving the debtor's petition and referring the matter to the conciliation commissioner. The secured creditor herein filed a motion on September 6, 1939, to dismiss the debtor's petition, alleging that he was not a farmer. The motion was denied. The court declared the debtor was primarily engaged as a farmer. On February 15, 1940, the debtor filed an amended petition under the provisions of section 75, sub. a, of the Bankruptcy Act as amended, praying that he be adjudged a bankrupt and also be entitled to all the benefits, privileges, rights and immunities provided for in said section 75, sub. s. Upon the recommendation of the commissioner on March 1, 1940, the court approved the amended petition declaring and adjudging the debtor, Harold H. Loose, a bankrupt, and referred the case to the conciliation commissioner to thereafter act as referee. On April 30, 1940, at a hearing before the commissioner, in the presence of the creditor, debtor and their counsel, an order was pronounced, providing, inter alia for a stay of three years pursuant to section 75, sub. s (2), of the Act, supra. This stay order was reduced to writing but was never signed by the commissioner. While counsel for both parties were negotiating for a final execution of the stay order, the bankrupt remained in possession, enjoying the use of the property. Formal execution of the stay order was never consummated, nor does there appear to have been any earnest effort by either party or their counsel to complete the same. In opposition to the creditor's attempt to realize on his security at the expiration of three years from the time the stay order was orally declared, the bankrupt contended that said stay order was null and void and the time in which it was to operate did not commence until formally executed. From the primary facts heretofore expressed the present conciliation commissioner concluded: "* * * that the appraisal of the debtor's property, the setting aside to

him of his exemption, and the arrangement whereby he was left in possession and given the actual use of his property, which he himself farmed, and paid the gross proceeds therefrom to the conciliation commissioner, who in turn approved the payment of expenses, maintenance and operation of the property, started the three year moratorium from April 30, 1940, the date of the first meeting of the creditors, and the date upon which the conciliation commissioner announced the term of the rental order, including the stay order; and the debtor and creditors, alike, having recognized the absolute jurisdiction of the court during the pendency of the entire proceedings, the same as if a stay order had been entered and formally signed, are now equally alike both estopped to deny the effect of the stay order, and by their action waive the formal signing thereof by the conciliation commissioner. To conclude otherwise in these proceedings is repugnant to what this commissioner deems to be fair and equitable administration of section 75 of the Bankruptcy Act."

The sole issue for determination relates to the legal sufficiency of the oral stay order and whether the doctrine of estoppel can be invoked against the bankrupt. Section 75, sub. s (1), provides inter alia: "After the value of the debtor's property shall have been fixed by the appraisal herein provided, the referee shall issue an order setting aside to such debtor his unencumbered exemptions, and his unencumbered interest or equity in his exemptions, as prescribed by the State law, and shall further order that the possession, under the supervision and control of the court, of any part or parcel or all of the remainder of the debtor's property shall remain in the debtor, as herein provided for, subject to all existing mortgages, liens, pledges, or encumbrances." Subsection (2) of the Act declares inter alia: "When the conditions set forth in this section have been complied with, the court shall stay all judicial or official proceedings in any court, or under the direction of any official, against the debtor or any of his property, for a period of three years. During such three years the debtor shall be permitted to retain possession of all or any part of his property, in the custody and under the supervision and control of the court. * * *"

In Borchard v. California Bank, 310 U.S. 311, 60 S.Ct. 957, 960, 84 L.Ed. 1222 the court observed: " 'The scheme of the statute is designed to provide an orderly procedure so as to give whatever relief may properly be afforded to the distressed farmer-debtor, while protecting the interests of his creditors by assuring the fair application of whatever property the debtor has to the payment of their claims, the priorities and liens of secured creditors being preserved.' "

The court in the Borchard case was quoting from John Hancock Mut. Life Ins. Co. v. Bartels, 308 U.S. 180, 187, 60 S. Ct. 221, 84 L.Ed. 176. "That orderly procedure includes an application by the debtor, * * * for an appraisal of the property, an order that the debtor remain in possession upon terms fair and equitable to him and to secured creditors, and the entry of a stay which will assure him of his possession for three years from the date of the order, upon the conditions mentioned in the Act. * * * No stay order has been entered fixing terms on which the debtors are to remain in possession. The petitioners were entitled to compliance with the procedure required by the statute." Borchard v. California Bank, supra. Unambiguous implications from the ruling of the last case cited require the stay order to be formally executed in writing. "Section 75, sub. s does not by its language condition a farmer's right to adjudication upon the diligence with which he has sought to obtain composition or extension under subsections a to r. It 'applies explicitly to a case of a farmer who has failed to obtain the acceptance of a majority in number and amount of all creditors whose claims are affected by a proposal for a composition of an extension of time to pay his debts.' John Hancock Ins. Co. v. Bartels, 308 U.S. 180, 184, 60 S.Ct. 221, 223, 84 L.Ed. 176. * * * And 'the Act must be liberally construed to give the debtor the full measure of the relief afforded by Congress * * * lest its benefits be frittered away by narrow formalistic interpretations which disregard the spirit and the letter of the Act.' Wright v. Union Central Ins. Co., 311 U.S. 273, 279, 61 S. Ct. 196, 200, 85 L.Ed. 184. Farmers cannot be deprived of the benefits of the Act because a court may believe that they have received the equivalent of what it prescribes. * * *" Wright v. Logan, 315 U.S. 139, 141, 62 S.Ct. 508, 509, 86 L.Ed. 745. "It is well established that a court of bankruptcy, in a strict sense, is a court of equity, the estate being a trust in the possession of persons completely under the control of

the court in so far as they deal with the property subject to its jurisdiction. In such proceedings, as in a court of equity, the court speaks only through its orders or decrees, duly signed or entered of record. No order having been entered at the conclusion of the hearing of May 12th, it must be considered as having been held open until the order was actually entered on July 17th." Donald v. San Antonio Joint Stock Land Bank, 5 Cir., 100 F.2d 312, 314. In Paradise Land & Livestock Co. v. Federal Land Bank, 10 Cir., 118 F.2d 215, 217, the District Court ordered the entry of a nunc pro tunc stay order which was effective as of the date the conciliation commissioner should have, but failed through inadvertence, to enter a formal stay order. The Circuit Court for the Tenth Circuit held: "The stay provided for is not an automatic stay but a judicial one, to be granted only upon a finding by the court that the conditions set forth in the section have been complied with. * * * Since the stay order fixes the beginning of the three-year period during which the debtor must pay rent, and the beginning of the maximum period within which the debtor must pay the first year's rental, we are of the opinion that the court was without power to give retroactive effect to its order of August 7, 1940, and start the running of the three-year period as of September 8, 1938, and place the debtor in default for nonpayment of rent for 1938. We conclude that the three-year period must be held to have commenced on April, 1940; that the debtor's obligation to pay rental commenced on April 1, 1940; and that the debtor should be required to pay rental for 1940 and during the remainder of the three-year period in accordance with the order of the Conciliation Commissioner of April 23, 1940".

One reason for the rule is declared in Re J. & M. Doyle Co., 3 Cir., 130 F.2d 340, 341. "It is obvious that if an extension is granted by a referee orally upon an oral motion (unless in the course of a hearing reported by a stenographer) adverse parties will have no knowledge of the motion or the extension. If no written motion is filed and the referee does not make a formal order it is apparent that within a very brief time neither the adverse parties nor the court will be able to tell what took place. The procedure prescribed by the rules must be followed exactly." The United States Supreme Court cases cited by the creditor do not disclose any other

than a liberal construction of the statute in favor of the bankrupt. Wright v. Logan, 315 U.S. 139, 62 S.Ct. 508, 86 L.Ed. 745; Wright v. Union Central Ins. Co., 311 U.S. 273, 61 S.Ct. 196, 85 L.Ed. 184. In Re Gammill, 45 F.Supp. 238, 241, the District Court said: "I find no case and none has been cited in which a stay order has been held requisite to start the moratorium period where the estate has been fully administered through the bankruptcy court under section 75 up to time for payment into court of appraised value or for liquidation in substantial accord with its provisions without interference by creditors and without complaint by bankrupt." The holding of the Supreme and Circuit Court decisions, supra, has been otherwise. Both the bankrupt and the creditor have been dilatory in failing to obtain a formal stay order. To diligently require compliance with the procedural steps provided for in section 75, sub. s (1) and (2), would have been far more advantageous to the creditor, inasmuch as his rights were restricted by extending the time allowed. From this aspect, estoppel would be as applicable against creditor from questioning the omission, as the debtor.

A signed written order by the conciliation commissioner is not only proper but necessary to determine the commencement of the three year stay period.

"Creation of Courts of Bankruptcy and Their Jurisdiction.—(a) * * * courts of bankruptcy * * * are hereby invested with such jurisdiction at law and in equity as will enable them * * * to— * * * (10) Consider records, findings, and orders certified to the Judges by referees and confirm, modify, or reverse such findings and orders, or return such records with instructions for further proceedings."

The law is thus set forth in Remington on Bankruptcy, 4th Ed., Vol. 2, p. 111, § 680:

"Referees act through orders. They do not render 'judgments' nor 'decrees'; they enter 'orders'. Without the entry of an order, neither the judge nor the upper courts will review the decision of a referee.

"It follows that the referee should always enter some written order on every petition or application made to him.

"And since a court of bankruptcy as a court of equity speaks only through its orders or decrees, duly signed or entered of record, where no order is entered at the

conclusion of a hearing before him, it must be considered as being held open until the order is actually entered."

The Frazier-Lempke Act came from the throes and agony of depressed farmers, who were being dispossessed of their farms through no fault of their own, but because of economic conditions, unfavorable weather, or insects which destroyed their crops. One or two years of crop failures and the farmer without adequate reserves, because seldom did any year yield more than sufficient to pay his expenses and living costs, found himself in the bankruptcy courts with the labor of the years lost. This remedial, beneficial and just Act did not forgive nor cancel the debt of the farmer, but merely postponed the date of payment, giving to the debtor an opportunity to pay his creditor and save his home for himself and his family. Most corporations can set aside reserves for profitless years, or stop paying dividends, but the farmer has no such advantage.

In view of the authorities heretofore cited, this court is compelled to reverse the order of the conciliation commissioner. The three year stay period under sec. 75, sub. s (1, 2), of the Bankruptcy Act will not commence to run until a formal stay order is entered by the referee, as provided by said section.