**In re KALB.**

**No. 22114.**

**District Court, E. D. Wisconsin.**

**Feb. 22, 1944.**

Elmer McClain, of Lima, Ohio, for debtor.

J. Arthur Moran, of Delavan, Wis., for Henry and Helen Feuerstein, creditors.

DUFFY, District Judge.

The matter now before the court is but another step in a farm debtor proceeding under Section 75 of the Bankruptcy Act, 11 U.S.C.A. § 203, which has been bitterly contested from its inception.

Debtor's original petition was filed October 2, 1934. After being dismissed on June 27, 1935, and reinstated on September 6, 1935, the proceeding was finally dismissed on March 17, 1936. The refusal of this court, 32 F.Supp. 356, on April 16, 1940, to reinstate such proceedings was affirmed by the Circuit Court of Appeals, 7 Cir., 116 F.2d 775, and certiorari was denied, 313 U.S. 568, 61 S.Ct. 940, 85 L.Ed. 1526. A new petition was then filed with this court on May 28, 1941, and thereafter this court refused to strike certain real estate from debtor's schedule, which action was affirmed by the Circuit Court of Appeals, 7 Cir., 127 F.2d 509. Other phases of the litigation regarding the property involved are reported in Kalb v. Feuerstein, 231 Wis. 185, 285 N.W. 431; Kalb v. Feuerstein, 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370; and Kalb v. Luce, 239 Wis. 256, 1 N.W.2d 176.

The farmer debtor has been adjudicated under Sec. 75, sub. s of the Bankruptcy Act. On April 7, 1943, the conciliation commissioner entered an order fixing the annual rental, and ordering a stay in proceedings for a period of three years conditioned upon payment of that rental. The following day Henry and Helen Feuerstein, as mortgage creditors, filed a motion based upon a verified petition asking the commissioner to find that the agricultural emergency no longer existed in the locality where the Kalb farm is located, and asking further for an order directing the immediate liquidation of the farm debtor estate. On October 27, 1943, the conciliation commissioner denied the motion and petition, and the matter now for decision is raised by a petition for a review of that order.

Sec. 75, sub. s (6), of the act, 11 U.S.C.A. § 203, sub. s (6) provides: "(6) This title is hereby declared to be an emergency measure and if in the judgment of the court such emergency ceases to exist in its locality, then the court, in its discretion, may shorten the stay of proceedings herein provided for and proceed to liquidate the estate."

Petitioners contend that no formal evidence should be necessary to prove that

536

the agricultural emergency no longer exists, and suggest that the court could well take judicial notice of greatly improved conditions in agriculture, but nevertheless attached several exhibits supporting this contention to their petition. Exhibit A is the affidavit of Walter H. Ebling, Agricultural Statistician for the Wisconsin State Department of Agriculture, which discloses that the gross farm income for the State of Wisconsin in 1942 was in excess of $500,-000,000, whereas in 1935, the year the Frazier-Lemke Act was enacted, it was slightly more than $297,000,000. Exhibit B is a publication entitled "Wisconsin Crop and Livestock Reporter", which was prepared by the U. S. Department of Agriculture and the Wisconsin Department of Agriculture and which shows an increase of 79% in Wisconsin farm prices in January, 1943, contrasted with those in the year 1935. Exhibit C is a publication entitled "The Farm Income Situation", which was published by the U. S. Department of Agriculture in September of 1942, and shows the gross farm income for the United States in 1942 to be twice as much as that of 1935. Exhibit D is a later issue of the same publication, dated December, 1942, which reveals a large increase of cash income received by farmers in the State of Wisconsin.

An unusual situation is presented in this case in that the farmer debtor is not in possession of his farm. Petitioners foreclosed their mortgage in 1933 and a sale was had, but prior to confirmation of the sale the first petition under Sec. 75 was filed in this court. The foreclosure sale was confirmed by the County Court of Walworth County, which action was affirmed by the State Supreme Court, 231 Wis. 185, 285 N. W. 431. However, the Supreme Court of the United States reversed, 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370, but not before petitioners had been given possession of the farm by the sheriff of Walworth County. Since March 12, 1936, petitioners have been in physical possession of the property.

The United States Supreme Court said in Kalb v. Feuerstein, supra, 308 U.S. page 443, 60 S.Ct. page 348, 84 L.Ed. 370: "The mortgagees who sought to enforce the mortgage after the petition was duly filed in the bankruptcy court, the Walworth County Court that attempted to grant the mortgagees relief, and the sheriff who enforced the court's judgment, were all acting in violation of the controlling Act of Congress. * * * the confirmation of the sale, the execution of the sheriff's deed, the writ of assistance, and the ejection of appellants from their property—to the extent based upon the court's actions—were all without authority of law. * * *"

Petitioners herein repeatedly emphasized that the Frazier-Lemke law was enacted in 1935 and that agricultural conditions have greatly improved since that year. However, by its terms, the act was to expire March 4, 1938, and Congress extended it to March 4, 1940. In the 76th Congress identical bills had been favorably reported from the judiciary committees of both the Senate and the House, which would have made Sec. 75 as amended in the bill permanent if enacted as reported. Defense legislation crowded out consideration of the proposed revision, but on March 4, 1940, the day the Frazier-Lemke law was to expire, Congress passed a bill providing for a four year extension. Thus, March 4, 1940, was the last date when Congress determined that an agricultural emergency existed, and authorized that "a petition may be filed by any farmer, stating that the farmer is insolvent or unable to meet his debts as they mature, and that it is desirable to effect a composition or an extension of time to pay his debts." Section 203(c).

Sec. 75 should be liberally construed to give the debtor the full measure of the relief afforded by Congress (John Hancock Mutual Life Insurance Co. v. Bartels, 308 U.S. 180, 60 S.Ct. 221, 84 L. Ed. 176); it should be interpreted so that the benefits to which the farmer debtor is entitled will not be lost to him by a narrow construction thereof. Wright v. Union Central Life Insurance Co., 311 U.S. 273, 61 S.Ct. 196, 85 L.Ed. 184.

Sec. 75, sub. s, provides, after an appraisal and the entry of a rental order, for a statutory moratorium of three years which, as is said in Adair v. Bank of America National Trust & Savings Ass'n, 303 U. S. 350, 355, 58 S.Ct. 594, 597, 82 L.Ed. 889, is to enable him "to retain possession of his property, under conditions favorable to its ultimate redemption by him" and, as is said in Borchard v. California Bank, 310 U.S. 311, 317, 60 S.Ct 957, 960, 84 L.Ed. 1222, "will assure him of his possession for three years." The Supreme Court has several times emphasized that the dominant purpose of this section of the act is to en-

title a farmer to the possession of his property and to grant him a three year moratorium provided he pays the rental fixed by the court. John Hancock Mut. Life Ins. Co. v. Bartels, supra; Borchard v. California Bank, supra; Wright v. Union Central Insurance Co., supra; Wright v. Logan, 315 U.S. 139, 62 S.Ct. 508, 86 L.Ed. 745; Mangus v. Miller, 317 U.S. 178, 63 S. Ct. 182, 87 L.Ed. 169.

In view of the Supreme Court's emphasis of the farm debtor's dominant right to possession and to the three year stay, the attempt of the mortgage creditor to force liquidation on the ground that the emergency has ceased is indeed clinging to a slender reed. Even if the court were to determine that the emergency has passed, the mortgage creditors here are asking that the court exercise its discretion to liquidate the estate when the farmer has not been in possession of his property since March 12, 1936.

 Perhaps sufficient has been said to indicate why the order of the conciliation commissioner must be approved. Even though, for the sake of argument, we admit the emergency has passed, it still was a matter of discretion. Under the peculiar and unusual facts of this case, there certainly was no abuse of discretion.

However, counsel for both parties have given much attention to the question of whether the agricultural emergency in Walworth County has ceased to exist. In view of their earnest discussion on this point, I am led to state my conclusions briefly.

When this section of the act was extended to March 4, 1944, our country was awakening to the need of a great defense effort. Many of the great nations of the world were then engaged in war. As was said by our Supreme Court in Falbe v. United States, 320 U.S. 549, 64 S.Ct. 346, 347, decided January 3, 1944, "* * * The danger of attack by our present enemies, if not imminent, was real, as subsequent events have grimly demonstrated. * * *" Congress realized that if war came our economy would be under great strain and there would of necessity be many dislocations, difficulties, and restrictions. We knew that agriculture would be called upon to expand greatly, for increased production would be essential to victory. Congress likewise bore in mind that upon the cessation of hostilities in

World War I it was agriculture which first felt the chill breath of the great depression which all agree was an aftermath of that disrupting struggle. It must be assumed that Congress had sufficient justification to enact the original legislation. Who can properly say that on March 4, 1940, Congress was guilty of any impropriety in declaring that the emergency in agriculture continued to exist? Although it must be admitted that the income of farms in Walworth County has increased considerably since March 4, 1940, we should not overlook such adverse factors as the shortage of farm labor, the high cost of farm labor, the inability to obtain farm machinery, and the difficulties of farm refinancing. I conclude that an agricultural emergency in Walworth County continues to exist.

An order may be presented confirming the conciliation commissioner's order of October 27, 1943.