In re WHITCOMB et al.

No. 7328.

District Court, D. Vermont.

Aug. 14, 1945.

Francis D. Foley and Samuel H. Rothman, both of Burlington, Vt., for creditor.

Consuelo Northrup Bailey and J. H. Macomber, Jr., both of Burlington, Vt., for bankrupts.

LEAMY, District Judge.

On September 16, 1944, the debtors presented their petition to this Court asking that they be afforded an opportunity to effect a composition or an extension of time to pay their debts under Section 75 of the Bankruptcy Act, 11 U.S.C.A. § 203. The petition was approved as properly filed under said section and the matter was referred to a conciliation commissioner, directing the debtors to appear before the commissioner and to submit to such orders as might be made in proceedings under that section. On November 18, 1944, the debtors filed with the Commissioner an inventory of their property, and three days later they filed with him a proposal for composition and extension of debt in which they offered to pay to James E. Kennedy, the petitioner herein, who is their only creditor, and in full settlement of his mortgages, the sum of $12,000, or in the alternative, that the actual debt be determined by an independent auditor and when determined that they would pay the same with interest at four percent per annum payable semi-annually and the principal to be paid in equal payments over a period of twenty years; also that they be permitted to cut wood and lumber from the farm and apply the net proceeds toward the purchase of necessary additional cattle, giving Mr. Kennedy a mortgage on such cattle as purchased.

A meeting of the creditors was held on December 8, 1944, at which the debtors were present and were examined. It appeared that their debts amounted to $19,-496.03, all of which was owed to the petitioner Kennedy, and that his claim, which was allowed in that amount, is secured by a mortgage upon the real estate described in the debtors' petition, and a lien upon certain personal property as described in chattel mortgages on record, the mortgaged chattels being for the most part cattle and farm machinery. At the hearing the debtors submitted their offer of composition or proposal for extension and Mr. Kenedy filed a written objection thereto, thereby rejecting the offer. The Conciliation Commissioner thereupon ordered that the case be closed as to all proceedings under Section 75, subs. a–r.

As the debtors were unable to obtain an agreement with their only creditor, they applied to be adjudged bankrupts under subsection s of Section 75. The application was filed on December 27, 1944. They asked therein "that their property, wherever located, whether pledged, encumbered or unencumbered, be appraised and that their unencumbered exemptions and unencumbered interest or equity in their exemptions as prescribed by the Laws of the State of Vermont be set aside to them, and that they be allowed to retain possession, under the supervision and control of the Court, of all the remainder of their property, including their encumbered exemptions, under the terms and conditions set forth in said Section 75, Subsection s, of the Bankruptcy Act." On December 29, 1944, the Court entered an order adjudging the debtors bankrupts and requiring further proceedings before the commissioner acting as referee under subsection s.

On February 16, 1945, the petitioner Kennedy moved to vacate and set aside the adjudication and to dismiss the debtors' petition on the several grounds that the proposal for composition and extension of debt was not made in good faith; that the debtors had not made any serious effort to adjust their affairs with their only creditor; that there was no probability of their rehabilitation and that continued operation of the farm would depreciate the value of petitioner's security; that they were not entitled to amend their petition since their proposal was not made in good faith; that they were not insolvent, and that as to the mortgaged personal property, under the laws of Vermont, the petitioner Kennedy had absolute title thereto and the right to the immediate possession thereof and that therefore the Court had no jurisdiction over it.

On May 29, 1945, the petitioner withdrew the tenth ground of his motion, namely, to vacate the adjudication and dismiss the petition and, on the same grounds, moved that the Court "refuse to take any control or possession whatever of the personal property on which he has chattel mortgages."

■ Since all of the grounds of the motion, except the last, raise questions of fact and no evidence was introduced thereon, no consideration need be given them. It may not be amiss however to point out that these grounds (except the one that the debtors are not insolvent) are very similar to the grounds relied upon in John Hancock Mutual Life Insurance Co. v. Bartels, 308 U.S. 180, 60 S.Ct. 221, 223, 84 L.Ed. 176, and as to which the Court ruled as follow: "The subsections of Section 75 which regulate the procedure in relation to the effort of a farmer-debtor to obtain a composition or extension contain no provision for a dismissal because of the absence of a reasonable probability of the financial rehabilitation of the debtor. Nor is there anything in these subsections which warrants the imputation of lack of good faith to a farmer-debtor because of that plight. The plain purpose of Section 75 was to afford relief to such debtors who found themselves in economic distress however severe, by giving them the chance to seek an agreement with their creditors, subsections a to r and, failing this to ask for the other relief afforded by subsection s. The farmer-debtor may offer to pay what he can, as Bartels did, and he is not to be charged with bad faith in taking the course for which the statute expressly provides. The only reference in Section 75 to good faith is found in subsection i, which relates solely to the confirmation of proposals for composition or extension when the court must be satisfied that the offer and its acceptance are in good faith and have not been made or procured by forbidden means or except as provided in the statute. That provision manifestly hits at secret advantages to favored creditors or other improper or fraudulent conduct."

However, the final ground of the motion, and apparently the one on which the petitioner primarily relies, raises a question of law.

Although the mortgages were not introduced in evidence, it seems to be conceded that at the time the debtors filed their application under Section 75, that the petitioner Kennedy was the holder of three chattel mortgages on a very substantial portion, if not all, of the debtors' cattle and farm machinery; that all of the mortgaged property was in the physical possession of the debtors and that Kennedy had made no effort to take possession of the property or to foreclose his mortgages thereon, notwithstanding the fact that the condition of each mortgage had been broken.

Kennedy contends that since the possession of the property by the debtors was permissive only, and that since by the law of Vermont his mortgages give him the legal title to the mortgaged property and the right to the immediate possession thereof, that the debtors have no rights in the property and that this Court should refuse to exercise any control over it. That might be so, were it not for the intervention of the provisions of Section 75.

Section 75 is an emergency measure for the relief of farmers who are in financial distress. Its two aims are to extend to the farmer the unmolested right to effect a composition of his debts, and upon his failure in that respect, it further extends to him, if he asks for it, the right to be adjudicated a bankrupt under subsection s, and to secure its benefits with respect to rehabilitation, provided there is a reasonable hope of rehabilitation. Subsection s provides, in substance, that after the value of the debtors' property has been fixed by appraisal, that the referee shall set aside the debtors' unencumbered exemptions *and direct his retention of possession of the rest of his property subject to all liens and to the court's supervision and control.* (Italics supplied.) It provides further, in paragraph 2, that if the statutory requirements have been met, that the court is directed to stay all proceedings against the debtor or his property for a period of three years, during which time the debtor may retain possession of his property, subject to the court's control, provided he pays a reasonable rental. The rental, which is paid into court, is to be used, first for the payment of taxes and necessary upkeep, and the balance distributed to creditors as their interests may appear. If it is necessary for the court to protect creditors "from loss by the estate," or "to conserve the security", the court may order the sale of any unexempt perishable property, or of any unexempt personal property not reasonably necessary for farming operations, and the court, in addition to the prescribed rental, may require payments by the debt-

or on the principal of his debts in the manner set forth. Paragraph 3 provides that at the end of the three year period, or sooner, the debtor may pay into court the appraised value of the property of which he retains possession, "including the amount of encumbrances on his exemptions, up to the amount of the appraisal, less the amount paid on principal" for distribution to his creditors. It also provides that upon the request of a creditor or the debtor the court shall cause the debtors' property to be reappraised and the debtor shall then pay the value arrived at into court for distribution to creditors. Thus, by order of court, the debtor may regain full possession and title of his property, the value of which has been devoted to the payment of his debts. And for the protection of secured creditors, it provides that upon request in writing of any one of them, that the court shall order the property, upon which he has a lien, to be sold at public auction. The debtor is to have ninety days to redeem the property so sold by paying the amount for which it was sold, with interest, into court, and he may apply for his discharge as provided in the Act. If the debtor fails to comply with the provisions of the section or with any orders of the court, or is unable to refinance himself within three years, the court may appoint a trustee and order the property sold or otherwise disposed of as provided in the Act.

 It is true, as the petitioner contends, that under Vermont decisions a chattel mortgage operates as an absolute sale, and that after condition broken the whole title vests in the mortgagee. But it vests "subject only to a right in equity to redeem." Paska v. Saunders, 103 Vt. 204, 215, 153 A. 451, 455. And this is a "right" which the Act plainly intends to protect, since subsection n of the act provides that "the filing of a petition * * * praying for relief under this section, shall immediately subject the farmer and all his property, * * * to the exclusive jurisdiction of the court, including all real or personal property, *or any equity or right in any such property* * * *." (Italics supplied.) And the intent of Congress to protect the farmer-debtor in his possession of mortgaged property is further expressed in subsection *o* which provides that "except upon petition made to and granted by the judge * * *, the following proceedings shall not be instituted, or if instituted at any time prior to the filing of a petition un-

der this section, shall not be maintained, in any court or otherwise, against the farmer or his property, at any time after the filing of the petition under this section, and prior to the confirmation or other disposition of the composition or extension proposal by the court: (1) Proceedings for any demand, debt, or account, including any money demand; * * * (6) Seizure, distress, sale, or other proceedings under an execution or under any lease, lien, chattel mortgage, conditional sale agreement, crop payment agreement, or mortgage."

 As the Supreme Court said in Wragg v. Federal Land Bank, 317 U.S. 325, 328, 63 S.Ct. 273, 275, 87 L.Ed. 300, " * * * § 75 prescribes its own criteria for determining what property interests may be brought within the jurisdiction of the court. In the interpretation and application of the Bankruptcy Act as in the case of other federal statutes, federal not local law applies. Prudence Corporation v. Geist, 316 U.S. 89, 95, 62 S.Ct. 978, 982, 86 L.Ed. 1293, and cases cited. It is for the bankruptcy court to determine, by reference to the provisions of the bankruptcy statute, what rights created by state law—regardless of the characterization which may be applied to them by *state statutes and decisions—are within* the jurisdiction of the bankruptcy court. United States v. Pelzer, 312 U.S. 399, 402, 403, 61 S.Ct. 659, 660, 661, 85 L.Ed. 913."

Subsection n of the Act clearly confers jurisdiction over the debtors' "right or the equity of redemption where the period of redemption has not or had not expired" and it had not expired here since no foreclosure proceedings had been instituted.

 Construing the Act liberally, as we are admonished to do, "lest its benefits be frittered away by narrow formalistic interpretations which disregard the spirit and the letter of the Act", it is apparent that its purpose is to maintain the farm as a going concern and it cannot be so maintained unless the debtor is permitted to have possession and to operate the property after the filing of the petition, upon terms which are equitable to him and his creditors and under a stay which will assure him of his possession during a period in which the possibility of his rehabilitation may be determined.

I hold therefore that the debtors' interest in, and their possession of the mortgaged property, whether it be designated under state decisions as a "right to redeem" or as a "right in equity to redeem", is an interest

intended to be subject to the jurisdiction of the Bankruptcy Court and is capable of administration in this proceeding. To hold otherwise would, it seems to me, completely defeat the purpose of the Act, in its effort to rehabilitate the farmer in financial distress.

Certainly the Act would be of little avail to a Vermont farmer, if upon the filing of a petition thereunder, every holder of a chattel mortgage could step in and strip the farm of the very chattels which are vital to its operation and to the possible rehabilitation of its owner.

Motion denied.